[No. B201663. Second Dist., Div. One. Feb. 17, 2009.]

DAVID S. KARTON, A LAW CORPORATION, Plaintiff and Respondent, v. WILLIAM RUSSELL DOUGHERTY, Defendant and Appellant.

**COUNSEL**

Musick, Peeler & Garrett and Cheryl A. Orr for Defendant and Appellant.

Dreier Stein Kahan Browne Woods George and Henry S. David for Plaintiff and Respondent.

**OPINION**

**ROTHSCHILD, J.**—In 1999, David S. Karton, A Law Corporation (Karton), sued former client William Russell Dougherty for allegedly unpaid fees and costs. The Los Angeles County Superior Court entered a default judgment against Dougherty in the amount of $86,676.88. The judgment included an award of attorney's fees, pursuant to the parties' retainer agreement.

Karton succeeded in collecting $56,000 on the judgment within two months of its entry. Since then, he has vigorously pursued further collection

efforts against Dougherty in California, Pennsylvania, and Tennessee. In addition, he has twice returned to the superior court to request awards of the attorney's fees he has incurred in enforcing the judgment. Both times, he failed to give notice to Dougherty that he was seeking such relief. Both times, the court granted his requests in their entirety. With the most recent such award, entered in February 2007, the principal amount of the judgment has ballooned to $1,146,578.36, plus $159,679.92 in interest.

After Dougherty learned of the February 2007 award, he filed a motion for relief from it, invoking both Code of Civil Procedure section 473 and the court's inherent equitable powers. The trial court denied the motion, and Dougherty appealed.

We reverse and direct the trial court to grant Dougherty's motion and vacate the February 2007 award. We further conclude that the default judgment itself is void on the face of the record and must be set aside.

## BACKGROUND

### I. Complaint, Proof of Service, Default, and Default Judgment

In June 1996, Dougherty retained Karton to represent him in a marital dissolution action. The written retainer agreement provided that if Karton's monthly bills were "not paid in full within thirty (30) days," then Karton reserved "the right to charge simple interest at the rate of ten percent (10%) per annum on the unpaid portions of the monies owed." The agreement also contained the following attorney's fees provision: "In the event legal services are commenced in connection with the enforcement of this agreement or the collection of the fees and/or the costs, whether in the form of a demand, a court action, or an arbitration proceeding, the prevailing party (to the extent permitted by law) shall be entitled to legal fees for services, as well as court and/or arbitration costs."

On March 2, 1999, Karton filed suit against Dougherty in Los Angeles County Superior Court, seeking to recover $65,246.63 in allegedly unpaid fees and costs, plus "interest thereon at the rate of ten percent (10%) per annum." Karton filed a first amended complaint on March 12, 1999.

On March 24, 1999, Karton filed a proof of service of the summons and first amended complaint. The first page of the proof of service identifies the process server as "William Russell Dougherty," the "Person served and title" as "Margaret Guzman—Reception," the "Person with whom left; title or relationship to person served" as "Margaret Guzman—Reception," and the

"Date and time of delivery" as March 16, 1999, at 3:30 p.m. The proof of service identifies the manner of service as "Substituted service." There is, however, no attached affidavit showing reasonable diligence in first attempting personal service. The proof of service also fails to state both the date on which the papers were mailed to the person to be served and the date and place of execution of the proof of service. The proof of service was signed by Paul Kern, a registered process server.

The superior court file contains a document issued by the court and dated April 29, 1999, stating that "[t]he request for entry of a civil default submitted" in Karton's action against Dougherty "has been turned down" because the proof of service was defective. The file does not contain the request for entry of default to which this document corresponds.

On May 5, 1999, Karton filed another request for entry of default and a second proof of service. On the same day, the clerk entered the default as requested.

The second proof of service states that "William Russell Dougherty" was both the process server, the "Person served and title," and the "Person with whom left; title or relationship to person served," and it identifies the "Date and time of delivery" as March 17, 1999, at 3:30 p.m. It identifies the manner of service as "(Personal service) By personally delivering copies to the person served." It is signed by Paul Kern and states that it was executed on March 17, 1999.

On June 7, 1999, the trial court entered a minute order denying without prejudice Karton's request for entry of default judgment, partly on the ground that Karton had failed "to submit [a] computation of interest (only a bottom line number is provided)." The court ordered Karton "to submit new papers with the above-mentioned problems corrected within 20 days."

On July 8, 1999, the court entered a minute order again denying without prejudice Karton's request for entry of default judgment, partly on the ground that the "computation of prejudgment interest does not appear to be correct," and attaching the court's own computation. The court again ordered Karton "to submit new papers with the above-mentioned problems corrected within 15 days."

On July 23, 1999, Karton filed a declaration and a memorandum of points and authorities in support of his request for entry of default judgment. In his memorandum of points and authorities he claimed he was "entitled to interest of $17,431.38 through June 30, 1999," but he gave no explanation of how he derived that number. His declaration said nothing about interest, and he attached no other documents supporting the claimed amount of interest.

On August 11, 1999, Karton filed a declaration in support of his request for default judgment. Attached as exhibits were his retainer agreement with Dougherty, his billing statements to Dougherty, and a spreadsheet that displayed the amounts and dates of Karton's bills, the amounts and dates of Dougherty's payments, and the interest accrued on unpaid bills. According to the spreadsheet, the total amount of unpaid fees and costs was $79,349.90, and the total interest was $2,446.51, for a combined total of $81,796.41 as of May 21, 1999. In the declaration to which the spreadsheet was attached, Karton stated: "The total of principal plus interest through May 21, 1999, is $81,796.41. The daily interest is $22.04. Inasmuch as I have used the principal sum of $65,246.63 (i.e. without interest) for purposes of default, the difference between $81,796.41 and $65,246.63 is $16,549.78; that is the amount of interest that is requested." Karton's statement that he "used the principal sum of $65,246.63 . . . for purposes of default" was presumably a reference to his operative first amended complaint, which alleged only $65,246.63 in unpaid fees and costs. Thus, although Karton's own calculations showed less than $2,500 in accrued interest on outstanding fees and costs of $79,349.90, and Karton's first amended complaint alleged only $65,246.63 in outstanding fees and costs, Karton requested an interest award of $16,549.78.[1]

On August 11, 1999, the trial court entered default judgment in the principal sum of $65,246.63, plus accrued prejudgment interest of $18,224.82[2] through August 6, 1999, plus costs of $679.50 and attorney's

---

[1] Karton's interest calculation contains an additional anomaly. The interest column of the spreadsheet bears the following heading: "Interest (10%/360 dy)." Karton's declaration says nothing about what that means, but a separate declaration by Karton's counsel, filed on the same day and attaching the same spreadsheet, contains the following somewhat opaque explanation: The interest "is computed by charging 10% per annum simple interest on the outstanding balance at the end of each month" and then "dividing said 10% by a 360-day year which is the same procedure [used] by the Los Angeles Superior Court in computing interest." The declaration cites no authority for the claim that the superior court calculates interest on the basis of a 360-day year. In any event, Karton and his counsel purported to be calculating interest due under a private contract (i.e., the retainer agreement) that provided for "simple interest at the rate of ten percent (10%) per annum." In 1976, the Supreme Court held that "quoting interest calculated on the basis of a 360-day year as 'per annum' constituted a violation of Business and Professions Code section 17500." (*Fletcher v. Security Pacific National Bank* (1979) 23 Cal.3d 442, 454 [153 Cal.Rptr. 28, 591 P.2d 51]; see *Chern v. Bank of America* (1976) 15 Cal.3d 866, 876 [127 Cal.Rptr. 110, 544 P.2d 1310] [" 'Per annum' means literally 'by the year.' [Citations.] As commonly understood, a year has either 365 or 366 days. [Citation.] In the absence of evidence to the contrary, we must assume that the public is likely to understand that a 'per annum' rate is an annual rate based on a 365-day calendar year."].)

[2] The judgment does not state the basis for the prejudgment interest calculation, but it appears to have been based on Karton's request for $16,549.78 as of May 21, 1999, plus $22.04 per day for the 76 days from May 21 to August 6. At $22.04 per day, 76 days' interest comes to $1,675.04, which when added to $16,549.78 yields a total of $18,224.82, which is the amount of interest awarded.

fees of $2,525.93, for a total of $86,676.88 as of August 6, 1999, with prejudgment interest continuing to accrue at the rate of $22.04 per day until entry of judgment. The judgment further provides that the court "expressly reserves jurisdiction to modify attorney[']s fees and costs incurred after the date hereof."

The superior court file contains a letter from Wells Fargo bank dated August 27, 1999, informing Dougherty that Karton had levied on roughly $51,000 in Dougherty's accounts. It is undisputed that by October 4, 1999, Karton had seized approximately $56,000 of Dougherty's funds in partial satisfaction of the default judgment.

## II. Dougherty's Motions to Vacate and Other Applications

Dougherty filed a number of motions and other applications in the trial court, seeking to set aside the default or stay the proceedings. None was successful.

On July 23, 1999 (i.e., after entry of default but before entry of the default judgment), Dougherty filed a request for a stay. In a supporting declaration, Dougherty's counsel stated that Dougherty had requested arbitration of the fee dispute before the Los Angeles County Bar Association. He further stated that the bar association had found that the request was timely, rejecting Karton's contention that it was not. On that basis, Dougherty requested "a stay of these proceedings pending arbitration." On July 30, 1999, the court entered a minute order denying Dougherty's request on the ground that "Defendant has no standing."

On September 3, 1999 (i.e., after entry of the default judgment), Dougherty filed an ex parte application for a stay and "return of property" pending a hearing on a motion to set aside the default judgment. On the same day, the court entered a minute order denying the ex parte application "without prejudice."

On September 7, 1999, Dougherty filed a motion to set aside the default and default judgment, to be heard on October 5, 1999. On October 4, 1999, Dougherty petitioned for bankruptcy protection. He did not appear for the October 5 hearing on his motion to set aside, and the superior court placed the motion off calendar.

On September 29, 1999, Dougherty filed an ex parte application for a temporary restraining order enjoining any further collection efforts by Karton and requiring him to return property already seized, pending a hearing on the

motion to vacate that was calendared for October 5, 1999. On the same day, the court entered a minute order denying the ex parte application.

On November 4, 1999, Dougherty filed a motion to set aside the default, to be heard on December 1, 1999. The superior court file contains no minute order or notice of ruling concerning the motion, and the trial court's docket reflects that no hearing was held on December 1, 1999.

On December 21, 1999, Dougherty filed a motion to set aside the default, to be heard on January 3, 2000. In opposition, Karton contended that the action was stayed because of Dougherty's bankruptcy filing. On January 3, 2000, the trial court denied the motion "without prejudice."

On February 18, 2000, the bankruptcy court entered a stipulated order modifying the bankruptcy stay to permit the superior court to decide "all motions, including to set aside the default and default judgment, and all other matters that may be properly brought before it, including those pertaining to the further liquidation of the KARTON claim." The stipulation, signed by counsel for both Karton and Dougherty, recited that the superior court had denied without prejudice Dougherty's previous motions to vacate the default and default judgment because the court had believed that the bankruptcy stay prohibited the court from ruling on the motions.

On April 14, 2000, Dougherty filed a motion to set aside the default, to be heard on May 4, 2000. On May 4, 2000, the trial court entered a minute order placing the motion "off calendar at the request of [m]oving [p]arty."

In sum, Dougherty filed seven motions or other applications as follows: (1) July 23, 1999 (i.e., prejudgment), request for stay, denied for lack of "standing"; (2) September 3, 1999 (i.e., postjudgment), request for stay, denied without prejudice; (3) September 7, 1999, motion to set aside, taken off calendar the day after Dougherty filed his bankruptcy petition; (4) September 29, 1999, application for temporary restraining order, denied; (5) November 4, 1999, motion to set aside, no hearing and no ruling; (6) December 21, 1999, motion to set aside, denied without prejudice; and (7) April 14, 2000, motion to set aside, taken off calendar at Dougherty's request. Four of the seven were motions to set aside the default and default judgment. Three of those four were never ruled upon, and the fourth was denied without prejudice.[3]

---

[3] In his respondent's brief, Karton states that "Dougherty filed a series of nine motions with the [t]rial [c]ourt, both noticed and ex parte, seeking to set aside the default and the 1999

### III. The 2003 Fee Award and Sister State Enforcement Proceedings

In the bankruptcy proceeding, Dougherty did not succeed in discharging his debt to Karton.

On April 21, 2003, Karton filed an application in the superior court for an award of supplemental attorney's fees totaling $252,819.29. Karton claimed that he had incurred the fees from 1999 through 2003 in opposing Dougherty's motions in the superior court and in resisting Dougherty's efforts to discharge the debt in bankruptcy. The requested amount also included $76,037.33 for Karton's own time spent working on the bankruptcy matter.

Karton contended that "[b]ecause the Judgment was entered as a default, no notice of this motion is required to be given to the Defendant." (Underscoring omitted.) Accordingly, Karton did not give notice to Dougherty.

In its tentative ruling, the superior court expressed concern about the lack of notice and said that "[t]he court needs authority for granting the relief here

[d]efault [j]udgment," adding that "[t]he [t]rial [c]ourt did not grant a single motion." We, however, have found seven motions or other applications, only four of which were motions to set aside.

As support for his version of the course of proceedings, Karton cites the allegations contained in a pleading Dougherty filed in 2005. We conclude that Karton's version is incorrect, partly because it mischaracterizes Dougherty's allegations and partly because Dougherty's allegations are themselves incorrect, based on our own review of the superior court file and docket. First, Dougherty's allegations describe a motion to set aside that Dougherty allegedly served on Karton but never filed with the court. Despite the express allegation that the motion was never filed (which we have confirmed by our review of the trial court's file and docket), Karton includes that motion in his count of the "series of nine motions" that "Dougherty filed." Second, Karton's count of "nine motions . . . seeking to set aside the default and the 1999 [d]efault [j]udgment" includes both Dougherty's application for a temporary restraining order and his two applications for stays, none of which sought to set aside the default or default judgment. Third, Dougherty's allegations describe both (1) an ex parte request for a stay that was filed on September 7, 1999, and denied without prejudice the same day and (2) a motion to set aside that was filed on September 14, 1999, to be heard on October 5, 1999, which was taken off calendar. The trial court's file contains no ex parte application filed on September 7 or any order denying it, and no motion filed on September 14. The file does contain a motion to set aside (described in the text, *ante*) that was filed on September 7, to be heard on October 5, which was then taken off calendar.

Karton's version of the procedural history contains other mischaracterizations as well. For example, after describing Dougherty's September 29 application for a temporary restraining order, Karton says: "The [t]rial [c]ourt denied that motion, just as it denied the eight others. [Citation.] Dougherty did not appeal even one of the nine orders, all of which denied his requests for relief." The superior court file reflects, however, that there were seven motions or other applications, not nine, and that the trial court never ruled on (and hence never denied) three of Dougherty's four motions to set aside. Thus, the "nine orders" to which Karton refers do not exist.

without notice to [Dougherty]." The court ultimately relented, however, and granted Karton's unnoticed request, thereby increasing the principal amount of the judgment to $349,340.45, plus interest of $40,575.24 as of July 14, 2003, with interest continuing to accrue at the rate of $97.04 per day.[4]

At some point Dougherty relocated to Pennsylvania and then to Tennessee. Karton has continued to pursue collection efforts in both states, and Dougherty has continued unsuccessfully to resist those efforts.

On June 28, 2004, a Pennsylvania trial court denied on grounds of res judicata Dougherty's "petition to strike/open foreign default judgment." Dougherty appealed, and the Superior Court of Pennsylvania affirmed. The appellate court, citing Pennsylvania case law, reasoned that it was required to give full faith and credit to the California judgment as long as Dougherty "had the opportunity to appear and defend" in California. The court cited Dougherty's September 7, 1999, motion to set aside (which was taken off calendar after Dougherty filed his bankruptcy petition) and his December 14, 1999, motion to set aside (which was denied without prejudice because of the bankruptcy stay) as showing that the Pennsylvania trial court did not abuse its discretion in determining that Dougherty had already been given "a full and fair opportunity to litigate" the issues raised in his petition. Dougherty also argued that he was entitled to notice of Karton's 2003 request for an award of supplemental attorney's fees. The Pennsylvania appellate court concluded that because the California trial court had decided that issue, res judicata applied to it as well.

As a result of the Pennsylvania enforcement proceedings, Dougherty and his wife, upon their relocation to Tennessee, entered into an agreement with

---

[4] The order amending the judgment contains the following anomaly: In Karton's declaration filed with the application for supplemental attorney's fees, he stated that "on or about August 27, 1999," he levied on Dougherty's Wells Fargo bank accounts and succeeded in seizing "about $56,000" in partial satisfaction of the judgment ("The levy successfully seized those funds"). When Karton later filed a proposed order granting his application, however, he submitted a new declaration in which he stated that "the principal amount of the Judgment, at August 11, 1999, was $86,786.88. This amount has remained unpaid and, therefore, has accrued interest at 10% per annum from and after the date of entry." He did not explain why the first declaration said he had collected $56,000, while the second declaration said he had collected nothing. His proposed order granting his application for supplemental attorney's fees, which became the order of the court, tracks the second declaration. It provides that "based on the declaration of Karton, submitted with this Order, . . . through April 20, 2003, the unpaid principal was $86,676.88 on the underlying judgment," i.e., the entire principal amount of the original default judgment remained unpaid. Although the record before us is not entirely clear on the point, it appears that the explanation is as follows: As a result of a stipulated order in the bankruptcy proceeding, Karton applied the $56,000 to his administrative claim for attorney's fees in that proceeding, rather than applying those funds to the default judgment pursuant to which he had originally seized them.

Karton to give him the proceeds of the sale of their Pennsylvania home, in partial satisfaction of the judgment. The record before us contains a declaration from Karton in which he estimates that "the sale will generate approximately $100,000 to be applied against" the default judgment. The record also contains unsworn statements by Dougherty's counsel estimating that Karton will receive well over $200,000 from the sale.

On October 18, 2005, a Tennessee trial court likewise rejected Dougherty's attempt "to have the judgment stayed, vacated and set aside." The court, having read the opinion of the Pennsylvania appellate court, agreed that "the issue of whether the default judgment obtained in California was legitimately obtained was fairly litigated in the California court and the issue is now a matter of *res judicata*." Dougherty voluntarily dismissed his appeal from that order, contending that he "simply does not have the resources to continue an appellate defense in Tennessee" and that he "simply cannot risk further fees being added to what he believes is a wrongful judgment."

As a result of the Tennessee enforcement proceedings, Karton garnished approximately 25 percent of Dougherty's wages in Tennessee. (The record reflects that the garnishment remained in effect as of May 2007, and the record contains no evidence as to whether the garnishment terminated thereafter.) Karton has also filed a separate lawsuit in Tennessee against Dougherty and his wife, alleging claims for violation of Tennessee's fraudulent transfer statute, common law fraud, abuse of process, malicious prosecution, and civil conspiracy. Karton's complaint alleges that Dougherty fraudulently transferred certain assets to his wife, "which transfers were done in order to avoid satisfaction of" the default judgment. The complaint specifically identifies the home that Dougherty and his wife have purchased in Tennessee, and the complaint asks the court to "set[] aside all fraudulent transfers made by Dougherty and order[] Dougherty to turn over to Karton all assets so transferred in order to satisfy" the default judgment.

## IV. The 2005 Action

In 2005, Dougherty filed suit against Karton in Los Angeles County Superior Court, seeking to set aside the default judgment and the 2003 fee award. Karton demurred on the basis of collateral estoppel, arguing that Dougherty's attacks on the judgment were precluded by the rulings on Dougherty's previous "series of nine (9) motions, both noticed and ex parte, to set aside the 1999 [j]udgment."

By minute order entered January 25, 2006, the court sustained the demurrer without leave to amend, stating that "[t]he doctrine of collateral estoppel bars the plaintiff's claims." On February 23, 2006, the court entered judgment "on the merits" in favor of Karton. In a postjudgment order entered April 13, 2006, the court awarded Karton attorney's fees and costs totaling $96,224.70.

Dougherty appealed from the judgment, but Karton moved to dismiss the appeal on the ground that Dougherty had not posted a bond ordered by the trial court as security for a potential fee award in favor of Karton. (The record reflects that the deadline for posting the bond was after the trial court sustained Karton's demurrer without leave to amend.) The Court of Appeal dismissed the appeal.

## V. The 2007 Fee Award

On February 14, 2007, Karton again applied to the superior court for an award of supplemental attorney's fees, costs, and interest. Karton claimed he had incurred the fees from 2003 through 2007 in his ongoing enforcement efforts in Pennsylvania, Tennessee, and California. According to Karton's memorandum of points and authorities, "as of the filing of the instant motion, and subject to an update to be submitted at the time of the hearing, Dougherty owes Karton, as of December 31, 2006, the sum of $1,204,298.30."[5] Again, Karton gave no notice to Dougherty and contended that none was required. Karton also filed an ex parte application for an order shortening time for the hearing on his request for fees, and the court granted the application.

On February 23, 2007, the trial court granted Karton's fee request. The court's order provides that "as of January 31, 2007, the principal amount of the judgment (i.e., $349,340.45) is increased by $652,086.95 plus interest of $89,798.29 plus $9,057.50 plus $60,824.12, resulting in a total of $1,306,258.28." The order concludes by instructing the clerk to issue, upon a request, "a writ of execution in the amounts of $1,146,578.36 principal and $159,679.92 interest, as of January 31, 2007."[6]

On May 15, 2007, Dougherty filed a motion for relief from the February 2007 order amending the judgment. The motion was based on Code of Civil Procedure section 473, subdivisions (b) and (d), as well as the court's

---

[5] The evidence Karton submitted in support of the application appears to continue Karton's previous practice of calculating interest on the basis of a 360-day year.

[6] The order, which appears to have been drafted by Karton's counsel, contains arithmetical errors. The order states that $349,340.45 plus $652,086.95 plus $89,798.29 plus $9,057.50 plus $60,824.12 is $1,306,258.28, but that is incorrect. The correct total is $1,161,107.31. The order also authorizes the clerk to issue a writ of execution in the principal amount of $1,146,578.36. But the order increased the previous principal amount of $349,340.45 by adding $652,086.95, so the new total principal amount should have been $1,001,427.40. In each instance, the calculations reflect a $145,000 error in Karton's favor.

inherent equitable powers.[7] Dougherty contended that in early March 2007, in response to a document production request in the Tennessee fraudulent transfer litigation, Karton produced copies of his 2007 request for attorney's fees and the order granting it. In his motion, Dougherty attacked the February 2007 order, the 2003 order granting Karton's first request for an award of supplemental attorney's fees, and the original default judgment on various grounds, including the lack of notice of the February 2007 proceeding.

On August 8, 2007, the trial court entered an order denying Dougherty's motion. On August 21, 2007, Dougherty filed a notice of appeal, purporting to appeal from both the February 23, 2007, order amending the judgment and the August 8, 2007, order denying his motion for relief from the February order.[8]

## DISCUSSION

### I. Dougherty Was Entitled to Notice of Karton's Requests for Postjudgment Attorney's Fees

Dougherty argues on appeal, as he did in his motion for relief from the 2007 fee award, that he was entitled to notice of Karton's applications (in 2007 and 2003) for awards of supplemental attorney's fees. We agree.

■ "[A] judgment creditor is entitled to the reasonable and necessary costs of enforcing a judgment." (§ 685.040.) Recoverable costs include attorney's fees incurred in enforcing the judgment if, as here, the judgment includes an award of attorney's fees pursuant to a contractual attorney's fees provision. (§§ 685.040, 1033.5; see *Miller v. Givens* (1994) 30 Cal.App.4th 18, 21 [37 Cal.Rptr.2d 1].) The judgment creditor may seek to recover attorney's fees incurred in enforcing a judgment by filing either a "memorandum of costs" under section 685.070, subdivision (b), or a "noticed motion" under section 685.080, subdivision (a).

Karton's 2007 application for attorney's fees does not cite either section 685.070 or section 685.080, so the first question we must resolve is whether Karton's application should be regarded as a memorandum of costs under the former statute or a motion under the latter. We conclude that it must be treated as a memorandum of costs under section 685.070, because section 685.080 expressly calls for the filing of a "noticed motion." (§ 685.080,

---

[7] All subsequent statutory references are to the Code of Civil Procedure unless otherwise indicated.

[8] On this court's own motion, the record is augmented to include the superior court files in both this action and Dougherty's 2005 action. The parties' requests for judicial notice are granted. Dougherty's motion to augment the record is denied as moot.

subd. (a); see also § 685.080, subd. (b) ["The notice of motion shall be served on the judgment debtor"].) Because Karton gave Dougherty no notice of his application for fees, the application was not a noticed motion. We therefore conclude that Karton's 2007 application for attorney's fees (like his 2003 application for attorney's fees) must be treated as a memorandum of costs under section 685.070.[9]

■ That conclusion does not relieve Karton of his obligation to give notice to Dougherty, however, because section 685.070 too requires notice. The statute provides that a judgment creditor "shall" serve a copy of the memorandum of costs on the judgment debtor. (§ 685.070, subd. (b).)

Karton nonetheless contends that he was not required to serve a copy on Dougherty. As support for that contention, Karton relies upon section 1010, which provides in relevant part: "No bill of exceptions, notice of appeal, or other notice or paper, other than amendments to the pleadings, or an amended pleading, need be served upon any party whose default has been duly entered or who has not appeared in the action or proceeding." On that basis, Karton argues that because Dougherty was in default, he was not entitled to notice of Karton's applications for postjudgment attorney's fees. We disagree.[10]

■ The interpretation of a statute is a pure question of law that we review de novo. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956].) In interpreting sections 685.070 and 1010, we are guided by the following familiar principles: "The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.] An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in the light of the statutory scheme [citation]; and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be

_____

[9] We wish to emphasize that our discussion of memoranda of costs concerns only memoranda of *postjudgment enforcement costs* filed pursuant to section 685.070. Our holding has no bearing on memoranda of *prejudgment* costs filed pursuant to section 1032 and subdivision (a) of section 1034, or California Rules of Court, rules 3.1700 and 3.1800.

[10] Karton also relies upon *Citizens Nat. Trust etc. Bk. v. Holton* (1930) 210 Cal. 44 [290 P. 447] (*Holton*), for the proposition that "a defaulting defendant is not due notice of a cost bill filed after default and entry of judgment," claiming that *Holton* "is dispositive on this issue." Karton's reliance is misplaced. Section 685.070 was enacted in 1982, more than 50 years after *Holton* was decided. The statute is therefore superseding authority. In addition, the relevant sentence of section 1010 (concerning parties in default) was enacted five years after *Holton* was decided. *Holton* consequently is irrelevant to the issues before us.

followed [citation]." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

We note first that neither party is aided here by the maxim that "when a general and particular provision are inconsistent, the latter is paramount to the former." (§ 1859.) On the one hand, section 1010 is particular with respect to parties whose default has been entered but is general with respect to "other notice[s] or paper[s]." On the other hand, section 685.070 is particular with respect to memoranda of enforcement costs but is general with respect to "judgment debtor[s]" (i.e., it does not distinguish *default* judgment debtors from other judgment debtors). Thus, the maxim that the particular controls over the general does not tell us whether section 1010's particular rule for parties in default controls over section 685.070's particular rule for memoranda of enforcement costs, or the other way around.

We conclude nonetheless that section 685.070 must be interpreted as requiring service of the memorandum of costs on all judgment debtors, including default judgment debtors, for the following reason: Section 685.070 provides that if the judgment creditor files a memorandum of costs and the judgment debtor does not timely file a motion to tax costs, then the court is required to allow all of the costs claimed in the memorandum of costs. (§ 685.070, subd. (d) ["If no motion to tax costs is made within the time provided in subdivision (c), the costs claimed in the memorandum are allowed."]; see Ahart, Cal. Practice Guide: Enforcing Judgments and Debts (The Rutter Group 2008) ¶ 6:51, pp. 6A-21 to 6A-22 (rev. # 1, 2007) ["If a timely motion to tax is not filed by the judgment debtor, enforcement costs claimed in the judgment creditor's Memorandum are automatically allowed and added to the judgment."].) Consequently, if Karton were right that a default judgment debtor is not entitled to notice of a memorandum of costs under section 685.070, then the statute would compel trial courts to grant all of the costs requested in such memoranda, because judgment debtors who are unaware of the proceedings will never have the opportunity to file motions to tax. In effect, every default judgment would become a blank check in favor of the judgment creditor. We cannot believe that the Legislature intended to create such a rule, which would make error and mischief virtually inevitable.

This case illustrates the dangers inherent in the sorts of uncontested proceedings that would result if Karton were right. Karton's 2007 memorandum of costs is improper on its face, for the following reason: A memorandum of costs under section 685.070 (like a noticed motion under § 685.080) must be filed "not later than two years after the costs have been incurred." (§§ 685.070, subd. (b), 685.080, subd. (a).) That is, the memorandum (or noticed motion) may seek only those costs incurred within two years before

filing. But Karton's 2007 attorney's fee application (like his 2003 attorney's fee application) requests fees incurred throughout the *four* years before it was filed.

Other problems have already been noted. For example, the order granting the 2007 fee application contains arithmetical errors that added an extra $145,000 to the default judgment, which originally was worth only $86,000 (of which $56,000 was paid less than two months after the judgment was entered).[11]

Under Karton's interpretation of the statutes, sections 1010 and 685.070 would prohibit trial courts from rooting out such errors, requiring them instead to rubber-stamp the memoranda of costs[12] filed by default judgment creditors in one uncontested proceeding after another.[13] Again, we cannot believe that the Legislature intended such a result.

For all of the foregoing reasons, we conclude that notwithstanding section 1010, section 685.070 required Karton to serve his 2007 fee application on Dougherty. The trial court thus erred as a matter of law when it concluded that Dougherty was not entitled to notice.

Apart from the merits, the trial court also stated certain procedural grounds for denying Dougherty's motion for relief from the order granting Karton's fee application, but we conclude that those procedural grounds too are unsound. First, the court said that section 473 "is not grounds for modifying, amending or revoking an order," but that is not correct. The statute provides that "[t]he court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him . . ." and "may, on motion of either party after notice to the other party, set aside any void judgment or order." (§ 473, subds. (b), (d).) Second, the court said that "adverse rulings are not surprise justifying relief under" section 473. Although the statement is correct, it is irrelevant. As a matter of law, Dougherty was entitled to notice of Karton's fee application, but he received none until after the application was granted. Consequently, as a matter of law, the order granting the application constituted a "surprise" for purposes of section 473. The order was a surprise not because it was adverse but rather because it was issued in a proceeding of which Dougherty was entitled to receive notice but received none.

---

[11] See footnote 4, *ante*.

[12] See footnote 9, *ante*.

[13] Subdivision (d) of section 685.070 might violate constitutional principles of separation of powers, because its categorical command that "all claimed costs are allowed" might impermissibly "defeat or materially impair" the courts' "inherent power to resolve specific controversies between parties." (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1103 [29 Cal.Rptr.3d 249, 112 P.3d 636].) Even if that subdivision were unconstitutional, however, our analysis of the notice issue would be unaltered.

On appeal, Karton raises one further procedural point. He contends that Dougherty's exclusive avenue for relief was a motion for reconsideration under section 1008, rather than a motion for relief under section 473, and that Dougherty's motion failed to satisfy section 1008's jurisdictional requirements. We conclude that, on the contrary, an order issued in a proceeding of which a party was entitled to receive notice but received none is precisely the kind of "surprise" to which section 473 was intended to apply. Karton cites no case holding to the contrary, and we are aware of none.[14] Dougherty was not merely asking the trial court to rethink a ruling on which Dougherty had already received an opportunity to be heard on the merits. Rather, he was seeking relief from an order issued in a proceeding from which he had been wrongly excluded. Section 473's purpose is to provide a remedy for such wrongs, among others.

In sum: Karton was required to serve his 2007 fee application on Dougherty, and the trial court erred as a matter of law in concluding to the contrary. The court thus abused its discretion when it denied Dougherty's motion for relief from the order granting Karton's fee application. (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 393 [33 Cal.Rptr.3d 644] [legal error constitutes abuse of discretion].) The trial court should have granted Dougherty's motion and vacated its February 23, 2007, order on Karton's application for a second award of supplemental attorney's fees and costs.[15]

### II. The 1999 Default Judgment Is Void on the Face of the Record

Dougherty argues that the 1999 default judgment is void on the face of the record and therefore "should be vacated," because it awards relief that exceeds what was demanded in Karton's operative first amended complaint. In particular, Dougherty argues that "[t]he Superior Court entered the 1999 Default Judgment against DOUGHERTY for the amount of $86,676.88," but "[t]his amount was not in the Complaint . . . ." We agree.

---

[14] Karton's reliance on *Gilberd v. AC Transit* (1995) 32 Cal.App.4th 1494 [38 Cal.Rptr.2d 626], is misplaced. In that case, a party sought relief under section 473 on the basis of certain errors by the party's counsel. (32 Cal.App.4th at p. 1498.) Dougherty's motion for relief, in contrast, was based on no such grounds. Rather, because Dougherty was not given the required notice and thus was wrongly prevented from participating in the proceeding at issue, his counsel did not even have the opportunity to make any errors in that proceeding.

[15] Dougherty purports to appeal from both the trial court's February 23 order and the court's order denying his motion for relief from the February 23 order. Karton has moved to dismiss the appeal from the February 23 order on the ground that it is untimely, but he does not challenge the timeliness of the appeal from the order denying Dougherty's motion for relief. Because we conclude on the appeal from the order denying the motion for relief that the trial court should have vacated its February 23 order, we deny Karton's motion to dismiss as moot.

Under section 580, subdivision (a), "[t]he relief granted to the plaintiff, if there is no answer, cannot exceed that demanded in the complaint . . . ." "The courts have consistently held section 580 is an unqualified limit on the jurisdiction of courts entering default judgments. As a general rule, a default judgment is limited to the damages of which the defendant had notice. Further, the courts have reaffirmed the language of section 580 is mandatory. Therefore, 'in all default judgments the demand sets a ceiling on recovery.' " (*Finney v. Gomez* (2003) 111 Cal.App.4th 527, 534 [3 Cal.Rptr.3d 604], fns. omitted, quoting *Greenup v. Rodman* (1986) 42 Cal.3d 822, 824 [231 Cal.Rptr. 220, 726 P.2d 1295].)

Because that ceiling is jurisdictional, "a default judgment is void when the damages are in excess of the damages specified in the complaint or the statement of damages." (*Yeung v. Soos* (2004) 119 Cal.App.4th 576, 582 [14 Cal.Rptr.3d 502].) "A void judgment may be challenged at any time." (*Ibid.*)

The damages awarded in the 1999 default judgment exceeded the damages pled in Karton's complaint. The complaint sought allegedly unpaid legal fees and costs totaling $65,246.63, plus prejudgment interest pursuant to the retainer agreement at the rate of 10 percent. Karton's own billing records and calculations based thereon, which he submitted in support of his successful request for entry of default judgment, show that as of May 21, 1999, the total accrued interest was less than $2,500 on outstanding fees and costs of over $79,000, with additional interest continuing to accrue at the rate of $22.04 per day. But the default judgment awarded Karton interest of over $18,000 as of August 6, 1999, on unpaid fees and costs of just $65,246.63. That cannot be correct, according to Karton's own evidence. Adding three months of interest at $22.04 per day to less than $2,500 of accrued interest as of May 21, 1999 (which was calculated on over $79,000 of principal), the total accrued interest in late August 1999 would have been roughly $4,500. Thus, interest of over $18,000 in early August 1999 on a smaller principal amount is mathematically impossible.

The record shows how this error occurred. In the declaration to which Karton's billing records and calculations were attached, Karton stated: "The total of principal plus interest through May 21, 1999, is $81,796.41 [i.e., principal of $79,349.90 plus interest of $2,446.51, as shown by his own evidence and calculations]. The daily interest is $22.04. Inasmuch as I have used the principal sum of $65,246.63 (i.e. without interest) for purposes of default, the difference between $81,796.41 and $65,246.63 is $16,549.78; that is the amount of interest that is requested." Thus, knowing that he had pleaded only $65,246.63 in unpaid fees and costs in the complaint, but apparently believing that the correct figure was over $79,000, Karton asked the court to give him the difference and call it "interest."

The law does not permit that. The operative complaint sought $65,246.63 in unpaid fees and costs, so the default judgment could award no more than that amount to Karton, regardless of whether he later came to believe the actual figure was higher. The operative complaint sought interest at the rate of 10 percent, so the default judgment could award no more than 10 percent interest to Karton. In fact, it awarded "interest" of $18,224.82 as of August 6, 1999. At an annual rate of 10 percent, it would take 2.79 years (or two years 289 days) to accrue that much interest on a principal sum of $65,246.63. Thus, for the interest award to have been within the amount demanded in the complaint, Dougherty would have to have owed Karton the full $65,246.63 by late November 1996. But Karton's own records show that by the end of November 1996 the total fees and costs Karton had billed to Dougherty were under $25,000, of which Dougherty had paid more than $10,000. Thus, again, it is mathematically impossible for the interest awarded in the default judgment to be within the amount demanded in the complaint.

We note further that Karton's statement in his declaration that "[t]he daily interest is $22.04," which was incorporated in the judgment, shows that the excess amount of the judgment was indeed an award of additional principal rather than some sort of gross miscalculation of interest. Calculated at an annual rate of 10 percent and on the basis of a 360-day year,[16] the daily interest on a principal sum of $79,349.90 is $22.04. Calculated at an annual rate of 10 percent and on the basis of a 365-day year, the daily interest on a principal sum of $65,246.63 is $17.87 (for a 360-day year, it would be $18.12). Thus, Karton's calculation of the daily amount of prejudgment interest ($22.04), which was incorporated in the judgment, was based on the principal sum of $79,349.90, not the $65,246.63 that he alleged in the complaint.

For the foregoing reasons, we conclude that the 1999 default judgment is void on the face of the record because it grants relief that exceeds what was demanded in the complaint.[17] The default judgment must therefore be set aside.[18]

---

[16] See footnote 1, *ante*.

[17] Dougherty also argues that the default itself, and not merely the default judgment, is void because he timely requested arbitration before the default was entered. We express no opinion on the argument because it involves factual issues that the trial court has never determined and that we cannot resolve as a matter of law on this appeal.

[18] Because we direct the trial court to enter an order vacating and setting aside the default judgment nunc pro tunc, the effect of the trial court's order on remand will be to nullify the 2003 fee award as well.

## III. Collateral Estoppel*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The superior court's order of August 8, 2007, is reversed, and the superior court is directed to enter a new and different order both (1) granting Dougherty's motion for relief and (2) vacating the superior court's February 23, 2007, order on Karton's application for a second award of supplemental attorney's fees and costs. The superior court is further directed to enter an order vacating and setting aside, nunc pro tunc, the default judgment entered on August 11, 1999. Appellant shall recover his costs of appeal.

Mallano, P. J., and Weisberg, J.,[†] concurred.

A petition for a rehearing was denied March 18, 2009, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied May 20, 2009, S171557. George, C. J., did not participate therein.

---

[*]See footnote, *ante*, page 133.
[†]Retired judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.