Filed 9/1/22  David S. Karton v. Dougherty CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DAVID S. KARTON, A LAW CORPORATION,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>WILLIAM RUSSELL DOUGHERTY,<br><br>Defendant and Appellant. | B310431<br><br>(Los Angeles County Super. Ct. No. 20STCP00278) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Dennis J. Landin, Judge.  Affirmed.

Musick Peeler & Garrett and Cheryl A. Orr for Defendant and Appellant.

Benedon & Serlin, Gerald M. Serlin and Melinda W. Ebelhar for Plaintiff and Respondent.

_____

David S. Karton, A Law Corporation (the Law Corporation) domesticated a Pennsylvania judgment in its favor and against William Russell Dougherty in the amount of $53,759.34. Dougherty moved to vacate the judgment in the trial court. The court ruled that the Law Corporation "has a valid judgment based on the sister state judgment," but granted the motion to reduce the amount of the judgment to $39,376.04 to reflect a judgment credit Dougherty had against the Law Corporation. The court thereafter entered an amended judgment and, later, a second amended judgment in favor of the Law Corporation in the reduced amount. Dougherty appealed. We affirm.

## FACTUAL SUMMARY AND PROCEDURAL HISTORY

### A. Background

In 1996, Dougherty retained the Law Corporation to represent him in a marital dissolution action. The retainer agreement provided that the "prevailing party" shall be entitled to recover "legal fees for services" commenced in connection with the enforcement of the agreement and collection of fees and costs. (*David S. Karton, A Law Corp. v. Dougherty* (2009) 171 Cal.App.4th 133, 136 (*Karton I*).)

In 1999, the Law Corporation sued Dougherty for breach of the retainer agreement and obtained a default judgment against Dougherty in the amount of $86,676.88. (*Karton I, supra*, 171 Cal.App.4th at pp. 138−139.) In 2003 and 2007, Karton sought, and the superior court granted, increases in the judgment amount based on the Law Corporation's attorney fees and expenses incurred to enforce the default judgment. (*David S. Karton, A Law Corp. v. Dougherty* (2014) 231 Cal.App.4th 600, 614 (*Karton II*).)

2

In September 2003, the Law Corporation domesticated the 1999 California default judgment in Pennsylvania, and thereafter pursued enforcement of the judgment against Dougherty in that commonwealth.

In 2006, a Pennsylvania court issued an order finding Dougherty in contempt for failing "to comply with a discovery order entered in pursuit of [the Law Corporation's] execution on its judgment," and ordered him to pay $5,000.[1] Dougherty paid that sum to the court.

The Law Corporation also sought to recover the attorney fees it incurred in connection with the Pennsylvania contempt proceedings. Dougherty and the Law Corporation, through their counsel, stipulated to an order awarding the Law Corporation $30,000 in attorney fees. Based on this stipulation, the Pennsylvania court entered an order on October 4, 2006 stating that Dougherty "shall pay counsel fees relating to all the outstanding [m]otions for [c]ontempt in the amount of $30,000 to David S. Karton . . . and his attorney" (the 2006 order).[2]

---

[1] Our record does not include the Pennsylvania court's 2006 contempt order. Our references to this order are based on David Karton's (the individual) and Dougherty's declarations, and the 2019 Pennsylvania court judgment itself (discussed below). On appeal, both sides describe the 2006 contempt proceedings as arising from "discovery disputes" between Dougherty and the Law Corporation.

[2] Although the Pennsylvania court's 2006 order awards a sum to "David S. Karton . . . and his attorney," not to the Law Corporation, Dougherty did not rely on this fact as a basis for vacating the judgment in the trial court and does not rely on it in this appeal. Indeed, Dougherty's declaration in support of his

## B.   *Karton I* and *Karton II*

In May 2007, Dougherty filed a motion in the Los Angeles County Superior Court attacking the 1999 default judgment and the subsequent orders that increased the amount of the judgment.  The court denied the motion, and Dougherty appealed.  We reversed.  (*Karton I*, *supra*, 171 Cal.App.4th at p. 152.)  We held that "the 1999 default judgment is void on the face of the record because it grants relief that exceeds what was demanded in the complaint," and directed the superior court to vacate and set aside that judgment nunc pro tunc.  (*Id.* at pp. 151−152.)

In August 2012, after a bench trial, the court determined that Dougherty had breached his retainer agreement with the Law Corporation.  The Law Corporation, however, had actually collected $14,383.30 more than the amount Dougherty owed, and Dougherty was therefore "entitled to a credit" in that amount "without interest, which [Dougherty] may apply to any other obligation he owes to [the Law Corporation]."

Although the Law Corporation recovered nothing on its claims against Dougherty, the superior court determined that the Law Corporation was the prevailing party and, on that basis, entitled to recover more than $1 million in attorney fees.  (*Karton II*, *supra*, 231 Cal.App.4th at pp. 603−604.)  Dougherty appealed, and we reversed.  We directed the trial court to grant Dougherty's motion to be determined the prevailing party to award Dougherty his costs and attorney fees.  (*Id.* at p. 614.)  The

---

motion to vacate the judgment states that he "entered into a stipulation agreeing to an [o]rder of $30,000 in attorneys' fees in favor of ALC," an acronym elsewhere defined as "David S. Karton, A Law Corporation."

trial court subsequently awarded Dougherty attorney fees and costs against the Law Corporation.[3]

### C.     The Pennsylvania Court's 2019 Judgment

In September 2019, the Law Corporation filed a motion in the Pennsylvania court to have judgment entered on that court's 2006 order.  Dougherty opposed the motion on the ground that the 2006 order was predicated on the Pennsylvania court's 2003 judgment, which was predicated on the 1999 California default judgment.  He argued that, because we held in *Karton I* that the California default judgment is void *ab initio*, the Pennsylvania court's 2003 judgment and 2006 order were not enforceable.  As an alternative, Dougherty requested that the court apply the California judgment credit of $14,383.30 to the amount of any judgment the court renders.

On December 12, 2019, after a hearing, the Pennsylvania court entered a judgment in favor of the Law Corporation and against Dougherty in the amount of $53,759.34, which reflected the $30,000 amount of the 2006 order plus interest on that sum at the statutory rate of 6 percent per annum.[4]  The court rejected Dougherty's request for the $14,383.30 credit offset.

---

[3] Dougherty thereafter assigned the rights to collect under those judgments to Musick, Peeler & Garrett, LLP (Musick Peeler).

[4] The December 12, 2019 order states that the judgment is in favor of David S. Karton.  On January 3, 2020, pursuant to the Law Corporation's motion, the Pennsylvania court ordered that the December 12, 2019 judgment be amended to replace "any reference to 'David S. Karton' therein" with " 'David S. Karton, A Law Corporation.' "

In rejecting Dougherty's argument that the 2006 contempt order should not be enforced because it "resulted from his violation of the now-vacated 1999 California judgment," the court explained that, if the Law Corporation was "seeking to enforce the underlying judgment in Pennsylvania," the effort would fail because the vacatur of the 1999 California judgment meant "there was no longer a judgment to enforce." The Law Corporation, however, was not seeking to enforce either the 1999 default judgment or the 2003 Pennsylvania judgment; rather it was "seeking to enforce its award of $30,000.00 for contempt," which "is a separate, distinct sanction to which counsel in 2006 agreed" and "collateral to the underlying judgment." "Consequently," the court concluded, "the matter before the [c]ourt does not turn on the ongoing validity of the underlying judgment. Rather, because it was a distinct sanction imposed upon a finding of contempt, it remains in full force and effect."

### D.    The 2020 California Sister State Judgment

On January 21, 2020, the Law Corporation filed an application in the Los Angeles County Superior Court for entry of judgment on the sister state judgment in the amount of $53,759.34 and issuance of a writ of execution. The same day, the court entered the requested judgment (the 2020 judgment). The next day, the Law Corporation served the 2020 judgment on Dougherty and his counsel.

On February 24, 2020, Dougherty filed a motion in the superior court to vacate the judgment. Dougherty argued that the judgment "was obtained by [the Law Corporation] as a result of improper collection activities in Pennsylvania on a void California judgment." Dougherty further argued that, if

6

the judgment is not vacated, the amount of the judgment must be reduced to reflect the application of his judgment credit of $14,383.30 to the amount due under the 2006 order as of August 3, 2012. This would result in a judgment of $37,830.09 as of January 21, 2020.

After a hearing, the court rejected Dougherty's request to vacate and set aside the judgment. The court reasoned that "the contempt sanction is collateral to the underlying default judgment because it is based on [Dougherty's] failure to comply with a discovery order, for which sanctions proceedings could have occurred regardless of the outcome of the appeal of the judgment. . . . Rather, on October 4, 2006, [the Pennsylvania trial court] entered an order *upon agreement of counsel* that [Dougherty] pay attorney fees relating to all the outstanding motions for contempt in the amount of $30,000 to [the Law Corporation]. . . . The order was expressly intended to finalize and resolve all matters relating to the outstanding contempt motions filed in the case and did not turn on the ongoing validity of the underlying judgment."

The court agreed with Dougherty that the amount of the judgment should be offset by the amount of $14,383.30. "Under the circumstances," the court explained, "it would be inequitable to disallow enforcement of the setoff, an amount found to be over[-]collected by [the Law Corporation] in the underlying action." The court, however, applied that offset to the amount of the Pennsylvania judgment as of the date it was rendered—December 12, 2019—not, as Dougherty had requested, to the amount due under the 2006 order as of August 3, 2012.

On December 11, 2020, the court entered an "amended judgment" (submitted by Dougherty's counsel) and, on January 4,

7

2021, the court entered a substantially similar "second amended judgment" (submitted by the Law Corporation] stating: "The sister state [j]udgment from Pennsylvania, entered as a judgment in Los Angeles, California on January 21, 2020, against William Russell Dougherty, is amended to reflect that the proper amount of the domesticated judgment is $53,759.34 (the amount of the Pennsylvania judgment) less $14,383.30 (a credit due William Russell Dougherty from [the Law Corporation]) result[ing] in an amended judgment of $39,376.04 as of January 21, 2020."

Dougherty timely appealed from the December 11, 2020 amended judgment and the January 4, 2021 second amended judgment.[5]

## DISCUSSION

### A.    Standards of Review

A party moving to set aside a judgment entered on a sister state judgment has the burden of showing why he is entitled to relief. (*Casey v. Hill* (2022) 79 Cal.App.5th 937, 961 (*Casey*); *Tsakos Shinning & Trading, S.A. v. Juniper Garden Town Homes, Ltd.* (1993) 12 Cal.App.4th 74, 88.) Where, as here, the facts are undisputed and the issues on appeal are purely legal, our review is de novo. (*Wells Fargo Bank, NA v. Baker* (2012)

---

[5] Because the second amended judgment supersedes the amended judgment, the appeal from the amended judgment is moot and we deem the appeal to be from the second amended judgment only.

The Law Corporation did not appeal from the ruling and does not challenge the court's application of Dougherty's judgment credit of $14,383.30 to reduce the amount of the judgment.

8

204 Cal.App.4th 1063, 1068.)  A court's application of a setoff against a judgment is reviewed for an abuse of discretion. (*Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 762.)

## B.    Domestication of the Pennsylvania Judgment

Article IV, section 1 of the United States Constitution provides:  "Full Faith and Credit shall be given in each State to the public Acts, Records and Judicial Proceedings of every other State."  Under this clause, "[a] final judgment in one [s]tate, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land.  For claim and issue preclusion (res judicata) purposes, in other words, the judgment of the rendering [s]tate gains nationwide force." (*Baker v. General Motors Corp.* (1998) 522 U.S. 222, 233 (*Baker*), fn. omitted.) The purpose of the clause is " 'to alter the status of the several states as independent foreign sovereignties, each free to ignore obligations created under the laws or by the judicial proceedings of the others, and to make them integral parts of a single nation.' " (*Williams v. North Carolina* (1942) 317 U.S. 287, 295.)

Generally, under the full faith and credit clause, California courts must recognize a judgment rendered "by another state if the state of rendition had jurisdiction over the parties and the subject matter and all interested parties were given reasonable notice and opportunity to be heard." (*World Wide Imports, Inc. v. Bartel* (1983) 145 Cal.App.3d 1006, 1010 (*World Wide Imports*).) A sister state judgment must be domesticated even if " ' "the action or proceeding which resulted in the judgment could not have been brought under the law or policy of California." ' " (*Traci & Marx Co. v. Legal Options, Inc.* (2005) 126 Cal.App.4th

9

155, 160; see *Union National Bank v. Lamb* (1949) 337 U.S. 38, 42 [the state of the forum [cannot] defeat the foreign judgment because it was obtained by a procedure hostile to or inconsistent with that of the forum]; *Roche v. McDonald* (1928) 275 U.S. 449, 452 [a "judgment, if valid where rendered, must be enforced in such other [s]tate although repugnant to its own statutes"]; but see *Pacific Employers Ins. Co. v. Industrial Accident Com.* (1939) 306 U.S. 493, 504–505 ["[f]ull faith and credit does not . . . enable one state to legislate for the other or to project its laws across state lines so as to preclude the other from prescribing for itself the legal consequences of acts within it"].)

Indeed, a forum state must recognize a final sister state judgment that is valid where rendered " 'even as to matters of law or fact erroneously decided' " by the rendering state's court. (*Bank of America v. Jennett* (1999) 77 Cal.App.4th 104, 118; accord, *Casey, supra*, 78 Cal.App.5th at p. 977.) In *Aldrich v. Aldrich* (1964) 378 U.S. 540, for example, a West Virginia court was required to give full faith and credit to a Florida judgment even though the Florida judgment was erroneous under Florida law. (*Id.* at p. 543.) And in *Fauntleroy v. Lum* (1908) 210 U.S. 230 (*Fauntleroy*), the high court stated that a Mississippi court must recognize the judgment of a Missouri court whether it "was right or wrong" or "based upon a mistake of law." (*Id.* at p. 237.)

Here, Dougherty does not contend that the Pennsylvania court that issued the 2006 order and the 2019 judgment lacked either jurisdiction of the subject matter or personal jurisdiction over him. His counsel stipulated to the 2006 order and he had notice of the 2019 Pennsylvania proceedings and given an opportunity to be heard. Indeed, Dougherty filed opposition to the Law Corporation's motion for entry of judgment in the

10

Pennsylvania court, which the court considered and rejected on the merits.

Dougherty argues, however, that California courts should not recognize the Pennsylvania judgment because it is void for lack of fundamental jurisdiction. (See *Conseco Marketing, LLC v. IFA & Ins. Services, Inc.* (2013) 221 Cal.App.4th 831, 839.) More particularly, he asserts that the judgment is void because it is based upon the Pennsylvania court's 2006 order, which arises "directly from the enforcement of the void 1999 California default judgment in Pennsylvania."

The Pennsylvania court considered this argument and rejected it. The court acknowledged that after our 2009 decision in *Karton I* voiding the 1999 California default judgment, "there was no longer a judgment to enforce" in Pennsylvania. The question, as explained by the Pennsylvania court in 2019, was whether the court should enter judgment on the 2006 order, which "[did] not turn on the ongoing validity of the underlying judgment." Rather, according to the Pennsylvania court, the 2006 order "is collateral to that judgment" and, as a "separate, distinct sanction to which counsel in 2006 agreed," "it remains in full force and effect."

We need not examine or determine whether the Pennsylvania court's rationale or conclusion are correct. The California trial court's task in deciding whether to vacate the sister state judgment was limited to determining whether Dougherty had established that the Pennsylvania court's judgment—even if it could not have been entered under California law or was based on the Pennsylvania court's misapplication of Pennsylvania law—was void for lack of subject matter or in personam jurisdiction. (See *Riley v. New York Trust*

11

*Co.* (1942) 315 U.S. 343, 349 [foreign state's "judgment controls in other states to the same extent as it does in the state where rendered . . . [citation] . . . even though the cause of action merged in the judgment could not have been enforced in the state wherein the enforcement of the judgment is sought"]; *Fauntleroy*, *supra*, 210 U.S. at p. 237 [forum state must recognize the judgment of a sister state even if it was "based upon a mistake of law"].) Dougherty failed to meet that burden.

Here, there is no dispute that the Pennsylvania court that issued the judgment had both jurisdiction of the subject matter and jurisdiction over Dougherty personally, that Dougherty (through his counsel) stipulated to the 2006 order, and that Dougherty was provided with notice and an opportunity to respond to the motion for entry of the judgment in 2019. Nor do the parties dispute that the 2019 judgment is a final judgment. Under the full faith and credit clause, therefore, the superior court was required to domesticate the 2019 judgment. (*Baker*, *supra*, 522 U.S. at p. 233; *World Wide Imports*, *supra,* 145 Cal.App.3d at p. 1010.)

The authorities Dougherty relies on are distinguishable or inapposite. In *Stuart v. Lilves* (1989) 210 Cal.App.3d 1215, the defendant purchased a residence in Colorado from the plaintiff, giving the plaintiff a promissory note secured by a deed of trust. The property was subsequently sold at a foreclosure sale. The plaintiff then sued the defendant in a California court to obtain a judgment for the deficiency due on the note. (*Id.* at p. 1218.) Because California law does not permit a deficiency judgment under these circumstances (Code Civ. Proc., § 580b), the court granted the defendant's motion for summary judgment and entered judgment for the defendant. The plaintiff then sued

12

the defendant in Colorado, where deficiency judgments after foreclosure sales are permitted.  The Colorado court rejected the defendant's argument that the California judgment was res judicata, and entered judgment for the plaintiff.  The plaintiff then domesticated the Colorado judgment in California and a California trial court denied the defendant's motion to vacate that judgment.  The Court of Appeal reversed, explaining that the Colorado court should have given full faith and credit to the California court's prior judgment in defendant's favor.  (*Stuart*, *supra*, 210 Cal.App.3d at p. 1221.)  Because it did not, the California court, when deciding whether to vacate the sister state judgment, was faced with conflicting judgments: the initial California judgment in favor of the defendant and the later Colorado judgment in favor of the plaintiff.  In that situation, the court concluded, the California decision takes precedence over the Colorado judgment.  (*Id.* at p. 1217.)

*Stuart* cited, and Dougherty relies on, *Hammell v. Britton* (1941) 19 Cal.2d 72 (*Hammell*), which also involved a conflict between California and Colorado judgments.  In that case, a California court determined that two persons were married at a certain point in time.  A Colorado court subsequently determined that the couple had been divorced at the same time.  In a subsequent action in California concerning title to property, a successor in interest to the husband relied on the Colorado judgment to establish that the couple were not married at the time in question.  Our Supreme Court rejected the plaintiff's argument that the California court must give full faith and credit to the Colorado judgment, stating:  "The full faith and credit clause does not compel this court to set aside a judgment rendered in this state in an action involving the same issue as

13

that subsequently adjudicated by a court of a sister state.  So to apply that clause would result in giving greater faith and credit to the judgments of the courts of other states than to those of the courts of this state. . . . If full faith and credit is to be given, it should have been given to the California judgment by the Colorado court when entertaining the plaintiff's action which resulted in the . . . Colorado judgment." (*Id.* at p. 84.)

In contrast to the Colorado courts in *Stuart* and *Hammell*, the Pennsylvania court in this case, in entering the 2019 judgment did not refuse to recognize a prior decision from this state.  Indeed, the Pennsylvania court in 2019 acknowledged that its 2003 judgment could not be enforced in Pennsylvania after we held in *Karton I* that the 1999 California default judgment was void.  The question before the Pennsylvania court was whether the 2006 order remained enforceable after *Karton I*. In *Karton I*, we determined that the 1999 default judgment was void "because it grants relief that exceeds what was demanded in the complaint." (*Karton I, supra*, 171 Cal.App.4th at p. 151.) That determination did not involve "the same issue" (*Hammell, supra*, 19 Cal.2d at p. 84) that the court adjudicated in the Pennsylvania contempt proceedings or resolved by issuing the 2006 order.  Although the 2006 order and the 2019 judgment arise from the 1999 default judgment and the 2003 judgment in the sense that the Pennsylvania contempt proceedings against Dougherty and the 2006 order would not have occurred in the absence of the earlier California judgment, the 2006 order was, as the Pennsylvania court and the California trial court concluded, "collateral" to the earlier judgments.  Thus, unlike the Colorado courts in *Stuart* and *Hammell*, the Pennsylvania court did not put the California trial court in the position of

14

having to resolve a conflict between the Pennsylvania court's 2019 judgment and our decision in *Karton I*.

Dougherty also cites to and discusses California and Pennsylvania cases for the principle that actions taken pursuant to a void judgment have no legal force or effect and efforts to enforce a void judgment can be ignored. (See, e.g., *People v. Gonzalez* (1996) 12 Cal.4th 804, 817; *Moore v. Kaufman* (2010) 189 Cal.App.4th 604, 608−614; *Rochin v. Pat Johnson Manufacturing Co.* (1998) 67 Cal.App.4th 1228, 1239−1240; *Northern Forests II, Inc. v. Keta Realty Co.* (Pa.Super.Ct. 2015) 130 A.3d 19, 34; *First Seneca Bank v. Greenville Distributing Co.* (Pa.Super.Ct. 1987) 533 A.2d 157, 162; *Einhorn Yaffee Prescott Krouner v. Dressler Corp.* (Pa.C.P. 1985) 33 Pa.D. & C.3d 205, 207−208 [1985 WL 5223].) From this principle, Dougherty contends that the 2003 judgment is void as a result of *Karton I* and the contempt proceedings and the 2006 order that arose from that judgment have no force or legal effect.

We need not decide whether or how California law or Pennsylvania law applies to the question whether one who disobeys a court's order concerning discovery in aid of enforcement of a judgment can be held in contempt or be required to pay attorney fees related to the contempt proceedings when the underlying judgment is subsequently declared void. How California courts might answer that question is irrelevant because the enforceability of the Pennsylvania judgment in California depends upon the validity and effect of the judgment in Pennsylvania (see *In re Mary G.* (2007) 151 Cal.App.4th 184, 201), and a California court "may not disregard the judgment of a sister [s]tate because it disagrees with the reasoning underlying the judgment or deems it to be wrong on the merits" (*V.L. v. E.L.*

15

(2016) 577 U.S. 404, 407). And how Pennsylvania law applies to that question is irrelevant because regardless of whether the Pennsylvania court in this instance was "right or wrong" in its application of Pennsylvania law, its judgment is valid and enforceable in that commonwealth and entitled to full faith and credit in California (*Fauntleroy*, *supra*, 210 U.S. at p. 237).

### C. The Court's Application of the $14,383.30 Judgment Credit

Dougherty next contends that the superior court erred by applying his $14,383.30 judgment credit to the 2019 Pennsylvania judgment as of its rendition on December 12, 2019, instead of applying it to the outstanding debt on the 2006 order as of August 3, 2012—the date the credit was created. If the court had applied the credit according to Dougherty's assertion, interest would have accrued on a debt of $26,120.81, instead of $40,504.11, as of August 3, 2012. As a result, Dougherty contends that the judgment is approximately $1,700 more than it would have been if the credit had been applied on the earlier date. Dougherty offers no citation to legal authority for his contention.

The application of the judgment credit to the debt created by the 2006 order was litigated in the Pennsylvania proceeding and the court denied Dougherty's request, as reflected in the 2019 judgment. For the reasons set forth in the preceding part, that judgment is entitled to full faith and credit in California, including the determination implicit in the judgment that the credit should not be applied to the debt prior the entry of the judgment. (See *Halvey v. Halvey* (1947) 330 U.S. 610, 614 [the full faith and credit clause "requires the judgment of a sister

16

[s]tate to be given full, not partial, credit in the [s]tate of the forum"].)

Even assuming that a California court could alter the Pennsylvania court's judgment by recalculating the amount due by offsetting Dougherty's judgment credit as of August 3, 2012, its power to do so was a matter within its discretion (*Crasnick v. Marquez* (2016) 248 Cal.App.4th Supp. 1, 7), and Dougherty has failed to show that the court's application of the judgment credit as of the date of the 2019 judgment was an abuse of discretion.

## DISPOSITION

The second amended judgment filed on January 4, 2021 is affirmed.  The respondent is awarded its costs on appeal.
<u>NOT TO BE PUBLISHED</u>.


                                        ROTHSCHILD, P. J.

We concur:



            CHANEY, J.



            KELLEY, J.\*

---

**\*** Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.