[No. B222175. Second Dist., Div. One. May 26, 2011.]

SIMKE, CHODOS, SILBERFELD & ANTEAU, INC., Cross-complainant and Respondent, v.
JERRY B. ATHANS et al., Cross-defendants and Appellants.

SIMKE, CHODOS, SILBERFELD & ANTEAU, INC., Plaintiff and Respondent, v.
JERRY B. ATHANS et al., Defendants and Appellants.

**COUNSEL**

Gladstone Michel Weisberg Willner & Sloane, Arthur Grebow; Greines, Martin, Stein & Richland, Marc J. Poster and Edward L. Xanders for Cross-defendants and Appellants and for Defendants and Appellants.

Simke, Chodos & Sasaki and David Manning Chodos for Cross-complainant and Respondent and for Plaintiff and Respondent.

**OPINION**

**MALLANO, P. J.**—In the event of a default, the "relief" granted to the plaintiff may not exceed the dollar amount demanded in the complaint or, in cases of personal injury or wrongful death, the dollar amount set forth in a statement of damages. (Code Civ. Proc., §§ 580, 425.11.) This rule applies not only to routine defaults, where the defendant fails to file an answer, but also to defaults entered as a sanction for misusing the discovery process. (*Greenup v. Rodman* (1986) 42 Cal.3d 822, 827–829 [231 Cal.Rptr. 220, 726 P.2d 1295] (*Greenup*).) The question presented here is whether a plaintiff may recover attorney fees incurred in a case terminated in his or her favor as a discovery sanction where the complaint contains a request for an *unspecified* amount of attorney fees. Put another way, does a complaint have to specify by dollar amount the attorney fees that will be incurred and sought in a case ultimately resolved by a default judgment entered as a discovery sanction?

We answer that question in the negative because the attorney fees awarded in this case do not constitute the type of "relief" that must be stated by amount in the complaint to be recovered in a default judgment entered as a terminating sanction.

# I

## BACKGROUND

The facts on this appeal are taken from the declarations and exhibits filed in connection with defendants' motion to vacate a default judgment containing an award of attorney fees and from our prior opinion in this case (*Athans v. Simke, Chodos, Silberfeld & Anteau, Inc.* (July 31, 2001, B137788) [nonpub. opn.] (*Athans*, B137788)).

As we previously explained: "In 1986, Jerry C. Athans, Sr., died. He was survived by his wife, Eva C. Athans and four adult children, Jerry B., George, Olga, and Catherine. Eva was the executor of Jerry Sr.'s estate.

"[In her capacity as executor,] Eva retained Goldsmith & Burns (Goldsmith) to file [a civil] action against Jerry B. and George, alleging that they had improperly acquired various family properties and companies (*Athans v. Athans* (Super. Ct. L.A. County, 1987, No. C662110)). [The contingency fee agreement between Eva, as executor, and Goldsmith was not submitted to the probate court for approval.] In 1989, the . . . case settled for roughly $1.5 million. According to the settlement agreement, Eva was to receive $20,000 individually, and the balance of the assets was to go to Jerry Sr.'s estate.

"After the settlement, Goldsmith demanded, pursuant to the parties' contingency fee agreement, that Eva pay approximately $520,000, plus shares of stock in one of the Athans family companies. Eva refused to pay.

"On May 7, 1990, Goldsmith filed a civil action for breach of the contingency fee agreement, naming as defendants Eva, individually and as executor of the estate, and the four Athans children (*Goldsmith v. Athans* (Super. Ct. L.A. County, 1990, No. BC000508)). The complaint contained 12 purported causes of action. The Athanses retained David Chodos, Esq., of Simke, Chodos, Silberfeld & Anteau, Inc. (collectively Chodos), to defend them. Chodos filed an answer to the complaint and filed a cross-complaint against Goldsmith, alleging legal malpractice. [The Simke firm is now known as Simke, Chodos & Sasaki.]

"The case proceeded to trial by jury. On November 12, 1991, the jury returned a verdict against Eva on the claim for breach of the contingency fee agreement and awarded Goldsmith $520,225.50, plus stock in one of the Athans companies. On Eva's cross-complaint for legal malpractice, the jury returned a defense verdict. None of the Athans children were found liable. Goldsmith was awarded attorneys' fees, costs, and prejudgment interest. Shortly after the verdict, Eva filed for bankruptcy.

"In October 1992, Jerry B. replaced Chodos with Boyd Lemon, Esq. Lemon moved for a new trial in *Goldsmith*, arguing that Goldsmith's entitlement to attorneys' fees should have been determined in probate court under the Probate Code, not in a civil action based on the contingency fee agreement. The trial court agreed and ordered that the case be retried in probate court. On appeal, Division Four of this [district] affirmed, [explaining that '[r]epresenting an estate in civil litigation is [an] extraordinary service for which an attorney must apply to the probate court for such amount [of fees] as the court may deem "just and reasonable." (See Prob. Code, former §§ 901, 902, 910, now *id.*, § 10811, subds. (a), (c)]' (*Goldsmith v. Athans* (July 16, 1996, B094812) [nonpub. opn.]). After remand, the superior court dismissed Goldsmith's complaint as 'improper' and found the contingency fee agreement to be unenforceable.

"On December 3, 1992, Eva, Jerry B., and George filed [this] action against Chodos in Los Angeles County Superior Court, alleging legal malpractice [arising out of the *Goldsmith* representation] (No. BC069926). Later, Chodos filed a cross-complaint, seeking to recover unpaid attorneys' fees and costs. [The cross-complaint sought $285,246.81 in unpaid attorneys' fees and costs, plus interest related to the *Goldsmith* case, and requested attorney fees incurred by Chodos in defending against the Athanses' complaint and in pursuing the cross-complaint, as authorized by a 'prevailing party' provision in the retainer agreement, but did not specify an amount of fees. The Athanses filed an answer to the cross-complaint.] On January 5, 1993, Chodos filed a separate action in Los Angeles County Superior Court against the Athans brothers, alleging that they owed the firm $285,246.81 in attorneys' fees and costs, plus interest[, for work performed on the *Goldsmith* matter] (No. BC072127). [The complaint also alleged that Chodos was entitled to attorney fees and costs, plus interest, incurred in bringing the action, as authorized by a 'prevailing party' provision in the retainer agreement, but did not state an amount of fees. The Athans brothers filed an answer to the complaint.] The two actions . . . were consolidated in the trial court for all purposes[, and Chodos was represented by Wasserman, Comden & Casselman (now known as Wasserman, Comden, Casselman & Esensten) in both suits].

"On February 5, 1993, Eva died. On April 20, 1994, the trial court, Judge William Huss presiding, dismissed Eva from the Athanses' malpractice complaint because a proper representative had not appeared on her behalf. The special administrator of Eva's estate, Frumeh Labow, promptly moved for reconsideration of the dismissal. The trial court vacated the order of dismissal, 'upon [the] condition that counsel for plaintiffs stipulate that the discovery responses of plaintiffs George Athans and Jerry Athans be deemed the discovery responses of plaintiff Frumeh Labow as Special Administrator of the Estate of Eva C. Athans . . . .'

"Through a series of transactions, the Athans brothers became the sole beneficiaries of Eva's estate. At some point, Frumeh Labow and Jerry B. became co-administrators of the estate.

"On August 29, 1996, Chodos served the Athans brothers with discovery, specifically, one form interrogatory, one supplemental interrogatory, a set of special interrogatories (eight in number), a set of requests for admissions (29 in number), and a document demand (containing five requests). Another document demand (containing 38 requests) was served on October 15, 1996.

"Together, the discovery requests went to the heart of the malpractice claim. For example, one of the requests for admissions stated: '[Chodos] did not commit any act of legal malpractice in connection with the prosecution of the complaint for legal malpractice against Goldsmith & Burns.' The form interrogatory sought the facts, names of witnesses, and documents supporting the answer to each request for admission. The supplemental interrogatory stated, 'Please review all of the answers previously made by you in response to interrogatories and identify all later acquired information bearing on all answers previously made.' One of the document demands requested documents supporting the contention that Chodos had committed malpractice.

"The Athans brothers did not respond to any of the discovery. As a result, Chodos filed five motions—four to compel answers to the interrogatories and document demands and one to deem the requests for admissions to be admitted. Chodos also sought monetary sanctions. The notice of each motion to compel stated that Chodos was seeking answers 'without objection.' The Athans brothers did not file an opposition to any of the motions.

"On December 20, 1996, the trial court, Judge Fumiko Wasserman presiding, heard argument on the motions and issued a minute order, stating that '[a]ll motions are granted and all responses are to be compelled within ten days.' Judge Wasserman also ordered the Athans brothers to pay $1,500 in sanctions within 30 days. On the same day as the hearing, Chodos served a notice of ruling, stating that the Athans brothers had to answer the discovery requests without objection.

"On or about December 30, 1996, the Athans brothers served discovery responses. They objected to, and did not answer, the form interrogatory, contending that form interrogatories were not permitted in this type of action. (See Code Civ. Proc., [former] § 2033.5, subd. (a) [(now id., § 2033.010)].) They objected to, and did not answer, the supplemental interrogatory, arguing that it was impermissible. As for the special interrogatories, the Athans brothers provided some answers but prefaced most of them with boilerplate objections based on the attorney-client privilege, invasion of privacy, and

relevancy. On the document demands, the Athans brothers objected to two requests based on the attorney-client privilege. They did not produce any of the requested documents on [the date set for production] or at any time thereafter.

"On January 2, 1997, the Athans brothers filed a motion for reconsideration of Judge Wasserman's ruling on the discovery motions. They argued that (1) all of the motions should have been denied because their attorney had been ill, which prevented him from making timely responses, (2) the requests for admissions should not have been deemed admitted because responses were served the day before the hearing (see Code Civ. Proc., [former] § 2033, subd. (k) [(now *id.*, § 2033.280)]), (3) some of the requests in the document demand sought documents that were irrelevant or protected by the attorney-client privilege, and (4) the form interrogatory was not permitted in this type of litigation. Chodos filed opposition to the motion.

"By order dated March 7, 1997, Judge Wasserman granted the motion for reconsideration with respect to the requests for admissions and set aside that portion of her order deeming them to be admitted. She denied the motion in all other respects. Notwithstanding the ruling, the Athans brothers did not serve supplemental discovery responses to comply with the partial denial of their motion, i.e., they did not produce the allegedly privileged documents, nor did they answer the form interrogatory.

"On March 24, 1997, Chodos filed a motion for ['terminating issue, evidence and/or monetary sanctions'] based upon the Athans brothers' failure to comply with Judge Wasserman's orders. The brothers filed opposition[, arguing the motion was frivolous, and Chodos had 'obstructed discovery' 'all along.'] The motion was heard on April 8, 1997. The trial court, Judge Ralph Dau presiding, issued a tentative ruling to grant the motion. The Athans brothers requested additional time to file a supplemental memorandum. Judge Dau allowed them one additional day—until April 9—to file papers addressing whether a motion to compel further responses was a prerequisite to the imposition of [the requested] sanctions. Chodos was ordered to file a response on April 10.

"Things did not go as planned. On April 10, 1997, the Athans brothers filed a 'statement of disqualification,' seeking to remove Judge Dau from the case. [The proceedings were] stayed. The Chairman of the Judicial Council assigned Judge Harold Bradford, a judge of the Superior Court of Alpine County, to rule on the matter.

"On June 3, 1997, Judge Bradford issued a five-page order, finding that Judge Dau was not disqualified. In the order, Judge Bradford stated: '[P]laintiffs' . . . actions to attempt to disqualify Judge Dau appear to be nothing

more than an attempt to get rid of the judge who had tentatively ruled against [them]. . . . Such abuse of the judicial process and the judiciary cannot be tolerated. The procedures for disqualifying clearly biased or prejudiced judicial officers are not intended to be used frivolously to attempt to avoid an adverse decision by a qualified, unbiased jurist.'

"On July 14, 1997, Judge Dau issued a 15-page order imposing terminating sanctions on Jerry B. [and] George . . . . The order directed that their malpractice complaint be stricken. Judge Dau also ordered that [the Athans brothers' answers be stricken] and [that] their defaults be entered on Chodos's cross-complaint to recover attorneys' fees and costs (case No. BC069926) and on Chodos's complaint in the separate action to collect attorneys' fees and costs (case No. BC072127)." (*Athans, supra,* B137788.)

On November 24, 1999, the Athans brothers filed what they captioned a "Brief . . . re Prove-up Hearing," arguing that Chodos was entitled to nothing. On or about December 3, 1999, Chodos filed a prove-up hearing brief, asserting it was entitled to $285,246.81 in unpaid attorney fees and costs, plus interest, related to the *Goldsmith* representation as well as attorney fees in the amount of $427,466.29, which was owed to Wasserman, Comden & Casselman for providing a defense to the Athanses' legal malpractice complaint and for pursuing the unpaid fees and costs sought in Chodos's cross-complaint and its complaint in the separate suit.

"On December 9, 1999, Judge [Robert] Letteau held a prove-up hearing against the Athans brothers based on the terminating sanctions and the resulting defaults. On the same day, Judge Letteau entered a default judgment against the brothers in the amount of $908,596.22." (*Athans, supra,* B137788.) The judgment consisted of $266,181.84 in attorney fees and costs owed to Chodos for its work in the *Goldsmith* representation; $14,545.34 in accrued interest through May 29, 1992; $200,402.75 in prejudgment interest from May 29, 1992, to December 9, 1999; and $427,466.29 in attorney fees that Chodos—found to be the prevailing party—owed Wasserman, Comden & Casselman for representing Chodos in all of the litigation. The case continued with respect to Eva's estate, which is not a party to this appeal.

The Athans brothers appealed, raising several challenges to the judgment but did not include the argument presently before us. In an unpublished opinion filed on July 31, 2001, we affirmed (*Athans, supra,* B137788).

Around 10 years later, in October 2009, Chodos renewed the judgment and served notice thereof on the Athans brothers. On November 20, 2009, the Athans brothers filed a motion to vacate the renewed judgment on the ground that Chodos's cross-complaint and its complaint in the separate action had

not requested a specific amount of attorney fees incurred in this litigation ($427,466.29.) (See Code Civ. Proc., § 683.170 [governing motions to vacate renewed judgments]; undesignated statutory references are to that code.)

On January 14, 2010, the motion came on for hearing. The trial court, Judge Gerald Rosenberg presiding, announced a tentative ruling to deny the motion, stating on the record that the Athans brothers' contention would require a plaintiff to specify an amount of attorney ·fees in the complaint "[n]ot knowing how many hoops you would have to jump through in order to get to the end of the case. . . . [I]t would be very difficult to plead 'and we want to be awarded $427,000 in attorney fees' without knowing what you're in for in terms of the course and scope of litigation. [¶] . . . [¶] . . . [H]ow could you possibly predict how much the attorney fees would be? . . . [T]he case could go by default with not a single motion, without hearing a word from the other side, and incur a very small amount of attorney fees." After argument by both sides, the trial court adopted its oral tentative as its final ruling and issued an order denying the motion to vacate. The Athans brothers appealed.

## II

## DISCUSSION

█ "In construing [a] statute, we follow ' "[t]he fundamental rule . . . that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. . . ." . . . In determining that intent, we first examine the words of the statute itself. . . . Under the so-called "plain meaning" rule, courts seek to give the words employed by the Legislature their usual and ordinary meaning. . . . If the language of the statute is clear and unambiguous, there is no need for construction. . . . However, the "plain meaning" rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose. . . . If the terms of the statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved . . . . " 'We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' . . ." . . . The legislative purpose will not be sacrificed to a literal construction of any part of the statute. . . .' " (*Paleski v. State Dept. of Health Services* (2006) 144 Cal.App.4th 713, 728–729 [51 Cal.Rptr.3d 28].)

The Athans brothers argue that, under California statutes and the due process clause (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7), attorney fees cannot be awarded in a default judgment entered as a discovery sanction

unless the complaint requested a specific amount of fees. We conclude otherwise because California statutes require only that the amount of "relief" be stated in the complaint, and "relief," as interpreted by the courts, does not include the attorney fees awarded in this case. Further, the due process clause does not require that a plaintiff include in the complaint an unknowable amount of future attorney fees imposed in connection with a terminating sanction.

By statute, "[a] complaint or cross-complaint shall contain both of the following: [¶] (1) A statement of the facts constituting the cause of action, in ordinary and concise language. [¶] (2) A demand for judgment for *the relief* to which the pleader claims to be entitled. If the *recovery of money or damages* is demanded, the *amount* demanded shall be stated. [¶] . . . Notwithstanding [the foregoing], where an action is brought to recover actual or punitive *damages* for *personal injury or wrongful death, the amount demanded shall not be stated* . . . ." (§ 425.10, subds. (a), (b), italics added.) In addition, "[n]o claim for exemplary damages shall state an amount or amounts" (Civ. Code, § 3295, subd. (e)) regardless of the type of lawsuit.

Section 425.11 provides: "When a complaint is filed in an action to recover *damages* for *personal injury or wrongful death*, the defendant may at any time request a statement setting forth the nature and amount of *damages* being sought. The request shall be served upon the plaintiff, who shall serve a responsive statement as to the damages within 15 days. In the event that a response is not served, the defendant, on notice to the plaintiff, may petition the court in which the action is pending to order the plaintiff to serve a responsive statement. [¶] . . . If no request is made for the statement [of damages], the plaintiff shall serve the *statement on the defendant before a default may be taken*." (§ 425.11, subds. (b), (c), italics added.)

Section 425.115 states: "The plaintiff preserves the right to seek punitive damages . . . on a default judgment by serving upon the defendant the following statement, or its substantial equivalent: [¶] NOTICE TO _____: (Insert name of defendant or cross-defendant) _____ (Insert name of plaintiff or cross-complainant) reserves the right to seek $____ (Insert dollar amount) in punitive damages when _____ (Insert name of plaintiff or cross-complainant) seeks a judgment in the suit filed against you. _____ (Insert name of attorney or party appearing in propria persona) _____ (Date) [¶] . . . [¶]

". . . A plaintiff who serves a statement on the defendant pursuant to this section shall be deemed to have complied with [Code of Civil Procedure]

Sections 425.10 and 580 . . . and Section 3295 of the Civil Code." (Code Civ. Proc., § 425.115, subds. (b), (d).)

■ The statute of critical importance here, section 580, states: "The *relief* granted to the plaintiff, if there is no answer, cannot exceed that demanded in the complaint, in the statement [of damages] required by Section 425.11, or in the statement [of punitive damages] provided for by Section 425.115 . . . ." (§ 580, subd. (a), italics added.) This rule applies to defaults entered as a terminating sanction for misuse of the discovery process—the situation here—as well as to routine defaults, where a defendant fails to file an answer. (*Greenup, supra,* 42 Cal.3d at pp. 827–829.) A default judgment that violates section 580 is void; it can be challenged and set aside at any time. (*Heidary v. Yadollahi* (2002) 99 Cal.App.4th 857, 862, 864–865 [121 Cal.Rptr.2d 695]; *Janssen v. Luu* (1997) 57 Cal.App.4th 272, 274–275 & fn. 2 [66 Cal.Rptr.2d 838]; *David S. Karton, A Law Corp. v. Dougherty* (2009) 171 Cal.App.4th 133, 150 [89 Cal.Rptr.3d 506].)

There is no universal definition or plain meaning of "relief." (See, e.g., Black's Law Dict. (9th ed. 2009) p. 1404, col. 2 [defining "relief" as "[t]he redress or benefit, esp. equitable in nature (such as an injunction or specific performance), that a party asks of a court"]; *id.* at p. 1294, col. 2 [defining "prayer for relief" as "[a] request addressed to the court and appearing at the end of a pleading; esp., a request for specific relief or damages"]; Webster's 3d New Internat. Dict. (2002 ed.) p. 1918, col. 1 [defining "relief" as a "legal remedy or redress"]; cf. Civ. Code, § 1717, subd. (b)(1) [requiring trial court to determine which party recovered "a greater relief" on contract claim as prerequisite to awarding attorney fees].) In interpreting Code of Civil Procedure section 580, we must therefore examine its legislative purpose and avoid an interpretation that would result in absurd consequences. (See *Paleski v. State Dept. of Health Services, supra,* 144 Cal.App.4th at pp. 728–729.)

Initially, we look to other related statutes and rules. In personal injury and wrongful death actions, a statement of damages, not the complaint, is used to demand "relief." (See Code Civ. Proc., §§ 425.10, 425.11.) For that purpose, a plaintiff must use a Judicial Council form, specifically, form No. CIV-050. (See Cal. Rules of Court, rule 1.31(a)–(c); Gov. Code, § 68511; 23 pt. 4 West's Ann. Code, Court Rules (2006 ed.) appen. A, pp. 477, 479; the form may be found online at <http://www.courts.ca.gov/forms.htm?filter=CIV> [as of May 26, 2011].) The "Statement of Damages" lists three categories of "relief": (1) "General damages," consisting of four subcategories—for example, "Pain [and] suffering," "Emotional distress," and "Loss of consortium"—plus "Other"; (2) "Special damages," consisting of eight subcategories—for example, "Medical expenses," "Loss of earnings," and "Property damage"—plus "Other"; and (3) "Punitive damages."

The "Statement of Damages" does not mention attorney fees even though fees are recoverable by statute in several types of personal injury and wrongful death actions. (See Code Civ. Proc., § 1021 [attorney fees awardable only where authorized by statute or parties' agreement]; see, e.g., Welf. & Inst. Code, § 15657, subd. (a) [attorney fees shall be awarded to plaintiff in elder abuse case if clear and convincing evidence proves that defendant is liable for physical abuse, neglect, or fiduciary abuse, and defendant acted with recklessness, oppression, fraud, or malice in committing wrongful conduct]; *Delaney v. Baker* (1999) 20 Cal.4th 23, 28–37 [82 Cal.Rptr.2d 610, 971 P.2d 986] [discussing availability of attorney fees in elder abuse cases where liability is based on professional negligence]; Code Civ. Proc., § 1021.4 [court may award attorney fees to plaintiff in action seeking to recover for injuries sustained as result of defendant's commission of felony where conviction obtained]; *Sommers v. Erb* (1992) 2 Cal.App.4th 1644, 1647–1650 [4 Cal.Rptr.2d 52] [plaintiff injured by defendant's commission of felony may recover attorney fees notwithstanding that plaintiff also committed criminal act]; Lab. Code, §§ 3706, 3709 [where employer fails to comply with coverage provisions of Workers' Compensation Act (Lab. Code, §§ 3200–6208), employee who prevails against employer in suit to recover for work-related injuries is entitled to award of attorney fees].) Thus, if a statement of damages, as mandated by sections 425.10 and 425.11 of the Code of Civil Procedure, and as referenced in section 580 of the same code, does not require a plaintiff to state an amount of attorney fees to recover them in a default judgment, then neither should a complaint in cases not for personal injury or wrongful death.

■ Further, if the plaintiff seeks a default judgment where an answer is not timely filed, he or she must first submit a "Request for Entry of Default," a Judicial Council form, specifically, form No. CIV-100. The use of that form is mandatory. (See Cal. Rules of Court, rule 1.31(a)–(c); Gov. Code, § 68511; 23 pt. 4 West's Ann. Code, Court Rules, *supra*, appen. A, pp. 477, 479; the form may be found online at <http://www.courts.ca.gov/forms.htm?filter=CIV> [as of May 26, 2011].) Section 2 of the form, entitled "Judgment to be entered," lists five categories, with corresponding blank lines, from which the judgment will be calculated, namely: (1) "*Demand of complaint*"; (2) "*Statement of damages*," with a citation to Code of Civil Procedure section 425.11, which governs cases for personal injury and wrongful death; (3) "Interest"; (4) "Costs"; and (5) "Attorney fees." (Italics added.) Because Code of Civil Procedure section 580 prevents a default judgment from exceeding the amount *demanded in the complaint* or, in personal injury or wrongful death cases, the amount set forth in the *statement of damages*, the Judicial Council's "Request for Entry of Default" form recognizes that attorney fees do not constitute "relief" for purposes of the statute. The form distinguishes between the "relief" permitted by section

580—"Demand of complaint" or "Statement of damages"—on the one hand, and items not governed by section 580—"Interest," "Costs," and "Attorney fees"—on the other hand, indicating that "relief," as used in section 580, means "damages." Generally, damages do not include attorney fees incurred and sought in the present litigation, although fees incurred in a *prior* action and sought by a client in a subsequent *legal malpractice* case are considered damages and must be stated by amount in the complaint. (See *Huckell v. Matranga* (1979) 99 Cal.App.3d 471, 482–483 [160 Cal.Rptr. 177] [attorney fees are not ordinarily damages]; *Lynch v. Warwick* (2002) 95 Cal.App.4th 267, 269–270 & fn. 1 [115 Cal.Rptr.2d 391] [attorney fees incurred in prior representation and sought in subsequent legal malpractice case are damages]; *Akin, Gump, Strauss, Hauer & Feld v. NDR* (Tex. 2009) 299 S.W.3d 106, 119–122 [same]; *John Kohl & Co. P.C. v. Dearborn & Ewing* (Tenn. 1998) 977 S.W.2d 528, 534 [same]; *Sorenson v. Fio Rito* (1980) 90 Ill.App.3d 368, 371–374 [45 Ill.Dec. 714, 413 N.E.2d 47] [defendant-attorney's malpractice permitted client to recover as damages the attorney fees paid to second attorney to correct defendant's mistake].)

Similarly, in a suit by an attorney against a client to recover unpaid attorney fees involving a prior representation, the fees would constitute damages and would have to be stated in the complaint. Here, Chodos included the amount of unpaid attorney fees related to the *Goldsmith* litigation ($285,246.81) in the cross-complaint and its complaint in the separate action.

Section 585, which governs the procedure for obtaining a default judgment, provides: "Judgment may be had, if the defendant fails to answer the complaint, as follows: [¶] (a) In an action arising upon contract or judgment for the recovery of money or damages only, if the defendant has, or if more than one defendant, *if any of the defendants have, been served*, other than by publication, and *no answer*, demurrer, notice of motion to strike of the character specified in subdivision (f), notice of motion to transfer pursuant to Section 396b, notice of motion to dismiss pursuant to Article 2 (commencing with Section 583.210) of Chapter 1.5 of Title 8, notice of motion to quash service of summons or to stay or dismiss the action pursuant to Section 418.10, or notice of the filing of a petition for writ of mandate as provided in Section 418.10 *has been filed with the clerk of the court within the time specified in the summons*, or within further time as may be allowed, *the clerk*, upon written application of the plaintiff, and proof of the service of summons, *shall enter the default of the defendant or defendants*, so served, and immediately thereafter *enter judgment for the principal amount demanded in the complaint, in the statement [of damages] required by Section 425.11, or in the statement [of punitive damages] provided for in Section 425.115*, or a lesser amount if credit has been acknowledged, *together with interest* allowed by law or in accordance with the terms of the contract, *and the costs* against

the defendant, or defendants, or against one or more of the defendants. *If, by rule of court, a schedule of attorneys' fees to be allowed has been adopted, the clerk may include in the judgment attorneys' fees in accordance with the schedule* (1) if the contract provides that attorneys' fees shall be allowed in the event of an action thereon, or (2) if the action is one in which the plaintiff is entitled by statute to recover attorneys' fees in addition to money or damages. *The plaintiff shall file a written request at the time of application for entry of the default of the defendant or defendants, to have attorneys' fees fixed by the court*, whereupon, after *the entry of the default*, the court shall hear the application for determination of the *attorneys' fees* and shall render judgment for the *attorneys' fees* and for the other relief *demanded in the complaint, in the statement [of damages] required by Section 425.11, or in the statement [of punitive damages] provided for in Section 425.115*, or a lesser amount if credit has been acknowledged, *and the costs* against the defendant, or defendants, or against one or more of the defendants." (§ 585, subd. (a), italics added.)

■ The procedure described in section 585 is tailored in part for routine defaults where no answer is filed, that is, where the *entry of default* is sought by filing Judicial Council form No. CIV-100. The statute authorizes the clerk and the trial court to enter a default judgment consisting of (1) the "amount" demanded in the complaint or the statement of damages, (2) punitive damages as requested pursuant to section 425.115, and (3) attorney fees and costs. For purposes of a default judgment, the statute distinguishes between (1) the "relief" that must be demanded in the complaint, a statement of damages, or a notice of punitive damages—which are governed by section 580—and (2) attorney fees and costs—which do not fall within section 580. Attorney fees are recoverable under section 585 even though an unspecified amount of attorney fees is demanded in the complaint or statement of damages. (See *Garcia v. Politis* (2011) 192 Cal.App.4th 1474, 1478–1479 [122 Cal.Rptr.3d 476] [discussing application of § 585 where no answer filed, use of Judicial Council form to request entry of default, and information to be included on form, including amount of attorney fees sought].)

Here, Chodos did not request the *entry of default*. Nor was it required to do so. The use of the Judicial Council form, "Request for Entry of Default," would have been inappropriate. Chodos requested a default *judgment* pursuant to the statute governing sanctions for the misuse of discovery, namely, former section 2023, subdivision (b)(4). That statute provided: "The court may impose a terminating sanction by one of the following orders: [¶] (A) An order *striking out the pleadings* or parts of the pleadings of any party engaging in the misuse of the discovery process. [¶] (B) An order staying further proceedings by that party until an order for discovery is obeyed. [¶] (C) An order dismissing the action, or any part of the action, of that party. [¶] (D) An order rendering *a judgment by default* against that party." (Former

§ 2023, subd. (b)(4), now § 2023.030, subd. (d), italics added; see Historical and Statutory Notes, 21A West's Ann. Code Civ. Proc. (2007 ed.) foll. § 2023.030, p. 64.) In addition, "[a] request for a [discovery] sanction shall, in the notice of motion, identify every person, party, and attorney against whom the sanction is sought, and specify the type of sanction sought. The notice of motion shall be supported by a memorandum of points and authorities, and accompanied by a declaration setting forth facts supporting the amount of any monetary sanction sought." (Former § 2023, subd. (c), now § 2023.040; see Historical and Statutory Notes, 21A West's Ann. Code Civ. Proc., *supra*, foll. § 2023.040, p. 85.) Consistent with these statutes, Chodos's motion did not request the entry of default but, instead, sought "[a]n order striking out the complaint of ATHANS" and "[a]n order rendering a judgment by default against ATHANS."

■ A review of the pertinent case law supports the conclusion that "relief," as used in section 580, refers to the damages, not attorney fees, that were awarded in the default judgment. In *Becker v. S.P.V. Construction Co.* (1980) 27 Cal.3d 489 [165 Cal.Rptr. 825, 612 P.2d 915], the court explained: "[D]efaulting defendants should not be subject to *damages* in excess of an amount specifically set out in the complaint. . . . [¶] The notice requirement of section 580 was designed to insure fundamental fairness. Surely, this would be undermined if the door were opened to speculation, no matter how reasonable it might appear in a particular case, that a prayer for *damages* according to proof provided adequate notice of a defaulting defendant's potential liability. If no specific amount of *damages* is demanded, the prayer cannot insure adequate notice of the demands made upon the defendant. . . . Consequently, a prayer for *damages* according to proof passes muster under section 580 only if a *specific amount of damages* is alleged in the body of the complaint." (*Becker*, at p. 494, citation omitted, italics added.) The court went on to say that the trial court should not have awarded attorney fees because "[p]laintiffs failed to set forth in their complaint *a prayer for attorney's fees.*" (*Becker*, at p. 495, italics added; see *Wiley v. Rhodes* (1990) 223 Cal.App.3d 1470, 1472, 1474 [273 Cal.Rptr. 279] [due process is satisfied if complaint requests unspecified amount of attorney fees and alleges entitlement to fees based on contract or statute].) Here, Chodos's cross-complaint and its complaint in the separate action requested an award of attorney fees pursuant to the "prevailing party" provision in the retainer agreement.

■ In *Greenup*, *supra*, 42 Cal.3d 822, the court stated: "We conclude that due process requires notice to defendants, whether they default by inaction or by wilful obstruction, of the potential consequences of a refusal to pursue their defense. Such notice enables a defendant to exercise his right to choose—at any point before trial, even after discovery has begun—between (1) giving up his right to defend in exchange for the certainty that he cannot

be held liable for more than a known amount, and (2) exercising his right to defend at the cost of exposing himself to greater liability." (*Greenup*, at p. 829.) Elsewhere in *Greenup*, the court referred to section 580 as a limitation on the "damages" that may be recovered (see *Greenup*, at pp. 827–828), ultimately concluding that "[b]ecause the default judgment in this case exceeded the ceiling on *damages* to which plaintiff is subject, we conclude that the award must be amended to conform to the limitations specified in section 580" (*Greenup*, at p. 829, italics added). More recently, we observed, " 'a default judgment is limited to the *damages* of which the defendant had notice.' " (*David S. Karton, A Law Corp. v. Dougherty, supra*, 171 Cal.App.4th at p. 150, italics added.)

The Athans brothers rely primarily on our decision in *Janssen v. Luu, supra*, 57 Cal.App.4th 272, for the proposition that section 580 requires a complaint to specify the amount of attorney fees the plaintiff will *thereafter* incur in the litigation. We held nothing of the sort. In *Janssen*, which involved the breach of a lease, the complaint demanded " 'in excess of $3,000, and according to proof.' " (57 Cal.App.4th at p. 274.) No answer was filed. Default was entered. After a prove-up hearing, the trial court entered a default judgment, awarding damages of $24,825.04, costs of $117, and $2,006.99 in attorney fees. We held that the plaintiff was entitled to a default judgment for $3,000 in damages and that everything above that amount, including the award of attorney fees, had to be stricken. We did not conclude the attorney fees were statutorily improper on the ground that an amount was not stated in the complaint. Rather, because the underlying award of damages should have been $3,000, not the $24,825.04 the trial court awarded, attorney fees of $2,006.99, when compared to $3,000 in damages, were not justified and had to be reversed. The situation in *Janssen* was analogous to a complete and unqualified reversal of liability, thereby requiring that an award of attorney fees to the plaintiff be vacated. Indeed, we gave the following practical advice to attorneys, which has nothing to do with predicting future attorney fees: "The solution to this [section 580] problem is not complicated. When the action is based upon the breach of a lease or some other kind of contract, the *damages* are known or subject to calculation. In this case, for example, [the plaintiff] knew the provisions of the lease, knew the amount of real property taxes chargeable to [the defendant], knew the average monthly utilities, and knew or could reasonably have estimated the clean-up costs. Thus, [the plaintiff] could have made an educated guess as to the amount of his *total damages* and demanded that amount in his complaint." (*Janssen*, at p. 279, italics added.)

The other cases relied on by the Athans brothers are also distinguishable. (See, e.g., *Matera v. McLeod* (2006) 145 Cal.App.4th 44, 63–68 [51 Cal.Rptr.3d 331] [default judgment, including award of attorney fees, vacated because trial court should have granted defendants' motion for mandatory

relief from default under § 473 based on attorney's neglect]; *Electronic Funds Solutions, LLC v. Murphy* (2005) 134 Cal.App.4th 1161, 1179–1180 [36 Cal.Rptr.3d 663] [default judgment, including attorney fee award, reversed because award of compensatory damages was not properly determined and thus rendered entire judgment invalid]; *Atkins v. Hughes* (1929) 208 Cal. 508, 516–517 [282 P. 787] [judgment should not have included attorney fees incurred in action seeking recovery of funds wrongfully paid to members of board of directors *before suit filed*; judgment was rendered after trial, not by default, and court did not cite § 580]; cf. *Hartke v. Abbott* (1931) 119 Cal.App. 439, 442 [6 P.2d 578] [where complaint prayed for $200 in attorney fees, trial court erred in awarding $301 in fees].) On the whole, these cases do not support the conclusion that "relief" in section 580 means attorney fees; they use the term "damages" in discussing the purpose and application of the statute. (See *Matera v. McLeod, supra*, 145 Cal.App.4th at pp. 60–61; *Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1208–1209 [99 Cal.Rptr.3d 642]; *Electronic Funds Solutions, LLC v. Murphy, supra*, 134 Cal.App.4th at pp. 1173–1177; see also *Stein v. York* (2010) 181 Cal.App.4th 320, 326–327 [105 Cal.Rptr.3d 1].) And the default judgment in *Hearn v. Howard, supra*, 177 Cal.App.4th 1193, a *legal malpractice* case, improperly included attorney fees the plaintiff-clients had paid to the defendant-attorney in a *prior* action; those fees constituted *damages* but were not stated by amount in the complaint. (*Id.* at pp. 1208–1209; see *Lynch v. Warwick, supra*, 95 Cal.App.4th at pp. 269–270 & fn. 1 [attorney fees incurred in prior representation and sought by client in subsequent legal malpractice case are damages]; *Akin, Gump, Strauss, Hauer & Feld v. NDR, supra*, 299 S.W.3d at pp. 119–122 [same]; *John Kohl & Co. P.C. v. Dearborn & Ewing, supra*, 977 S.W.2d at p. 534 [same]; *Sorenson v. Fio Rito, supra*, 413 N.E.2d at pp. 51–53 [defendant-attorney's malpractice permitted plaintiff-client to recover as damages the attorney fees paid to second attorney to correct defendant's mistake].)

■ The Athans brothers counter that, regardless of California statutory law governing the relief demanded in the complaint, they were entitled, as a matter of due process, to *post*complaint, *pre*default notice of the amount of attorney fees that might be sought in connection with a terminating sanction. But they cite no principle of due process, and we are aware of none, that requires a defendant to be given advance notice of the *total amount* of attorney fees he or she might have to pay the plaintiff where the defendant *knows from the complaint that the plaintiff will seek attorney fees if he or she prevails*, and the case terminates in the plaintiff's favor years after commencement due to *the defendant's repeated violation of the trial court's discovery orders*. "[T]he purpose of due process is to ensure 'fundamental fairness' " (*In re S.D.* (2002) 99 Cal.App.4th 1068, 1082 [121 Cal.Rptr.2d 518]), and "fundamental fairness requires that a default judgment be limited

to 'the specific amount of *damages* alleged in the complaint' " (*Traci & Marx Co. v. Legal Options, Inc.* (2005) 126 Cal.App.4th 155, 160 [23 Cal.Rptr.3d 685], italics added). ▮ Here, in accordance with California statutory law, the default judgment did not exceed the "relief" stated in the complaint, namely, $285,246.81. As discussed, the award of attorney fees of $427,466.29, incurred by Chodos in this litigation, did not constitute "relief," that is, damages. We therefore conclude that California statutory law, as well as due process, was satisfied.

The due process cases cited by the Athans brothers are not to the contrary. (See, e.g., *Wiley v. Rhodes, supra,* 223 Cal.App.3d at pp. 1472–1473 [due process mandated postcomplaint, predefault notice of amount of punitive *damages* demanded]; *Parish v. Peters* (1991) 1 Cal.App.4th 202, 205, 209–212 & fn. 9, 216 [1 Cal.Rptr.2d 836] [in personal injury action where service of process is effected by publication, due process requires that, prior to entry of default, defendant be served with "notice of the amount of *damages* claimed" (italics added)]; *Ely v. Gray* (1990) 224 Cal.App.3d 1257, 1261–1264 [274 Cal.Rptr. 536] [in action for accounting, where amount owed by defendant is not known when complaint is filed, due process requires that defendant be served with postcomplaint, predefault notice of "amount of money" demanded, using notice similar to statement of *damages* required by § 425.11]; *Finney v. Gomez* (2003) 111 Cal.App.4th 527, 545–550 [3 Cal.Rptr.3d 604] [in colandowner's action for partition of property resulting in default judgment, trial court abused its discretion by awarding plaintiff 100 percent of attorney fees of partition and 100 percent of bankruptcy attorney fees because, under applicable substantive law, fees should have been apportioned according to parties' ownership interest in property—50 percent each—and trial court failed to determine if award of attorney fees for bankruptcy matter was reasonable].)

Further, the *post*complaint, *pre*default notice of attorney fees proposed by the Athans brothers—requiring that the amount of accrued fees be stated in the motion for terminating sanctions—would not serve any legitimate goal. As recognized in *Greenup*, notice under the due process clause "enables a defendant to exercise his right to choose . . . [to] giv[e] up his right to defend in exchange for the certainty that he cannot be held liable for more than a known amount." (*Greenup, supra,* 42 Cal.3d at p. 829.) But the postcomplaint, predefault notice proposed here would rarely, if ever, protect a defendant's litigation options. By the time such notice would be given, the defendant would no longer have any choice in the matter. Rather, the *trial court*, in ruling on the motion for terminating sanctions, would decide whether the right to defend had been lost. In this case, for example, Chodos's motion for terminating sanctions was met with opposition papers attacking the motion as frivolous and arguing that Chodos, not the Athans brothers, had

misused discovery. Nor does due process mandate that a plaintiff serve a defendant with weekly or monthly updates stating the amount of accrued attorney fees.

██ Finally, we emphasize the impossibility, not just the mere difficulty, of the task that would be imposed on plaintiffs at the time of filing a complaint if we interpreted "relief" in section 580 to include attorney fees awarded in a default judgment entered as a discovery sanction. Here, for instance, the trial court awarded terminating sanctions approximately three and one-half years after the litigation commenced. When Chodos's complaint and cross-complaint were filed, no attorney could have predicted with any accuracy whether or when terminating sanctions might be imposed or how much work might be done on the case *after* the pleadings were filed and *before* the default prove-up hearing. Thus, *prior to the prove-up hearing*, Chodos could not have known or accurately predicted the *total amount* of attorney fees the firm would incur in the litigation and could not have included that amount in the complaint. "The law[, including due process,] never requires impossibilities." (Civ. Code, § 3531; see *People v. Mitchell* (1994) 30 Cal.App.4th 783, 799 [36 Cal.Rptr.2d 150].)

## III

## DISPOSITION

The order is affirmed.

Chaney, J., and Johnson, J., concurred.

Appellants' petition for review by the Supreme Court was denied September 14, 2011, S194556.