Filed 8/18/23  Haaverson v. Tavistock Freebirds, LLC CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| NATALIE HAAVERSON,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TAVISTOCK FREEBIRDS, LLC et al.<br><br>    Defendants and Appellants. | A164043<br><br>(Alameda County Super. Ct. No. RG-19-030716) |

Defendants and appellants Tavistock Freebirds, LLC, Freebirds World Burrito, and Tavistock Freebirds Holdings, LLC (collectively, Tavistock) appeal after the trial court granted terminating sanctions against Tavistock, struck its answer to plaintiff and respondent Natalie Haaverson's complaint, and entered a default judgment.  The judgment awarded $25,000 in penalties pursuant to the Private Attorneys General Act (PAGA) (Lab. Code § 2698 et seq.), $48,793.90 in costs, and $709,620 in attorney fees, which included a 3.0 multiplier.  Tavistock argues that the award of $758,413.90 in attorney fees and costs should be vacated because the complaint failed to allege any specific amounts of fees or costs as required under Code of Civil Procedure section 580.[1]  Alternatively, Tavistock argues that the trial court erred in

_____

[1] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

1

awarding a 3.0 multiplier as well as certain items of costs. We disagree with Tavistock's arguments and affirm.

## I. <u>BACKGROUND</u>[2]

In August 2019, Haaverson filed a PAGA action against Tavistock that alleged various Labor Code violations. The complaint's prayer for relief requested "civil penalties according to proof" as well as "reasonable attorney's fees and costs." The civil case cover sheet indicated that the amount demanded exceeds $25,000.

### A. <u>Motions to Compel</u>

After Tavistock responded to Haaverson's initial written discovery requests, Haaverson filed three motions to compel further responses from Tavistock which included requests for monetary sanctions. Among other items, Haaverson argued that Tavistock failed to produce requested timekeeping and payroll records for the aggrieved employees. The trial court granted all three motions and awarded monetary sanctions to Haaverson. In its amended order, the court required that Tavistock produce all edited or altered timekeeping and payroll records for the aggrieved employees.

Trial was set to begin on April 26, 2021. In February 2021, Tavistock filed a petition for coordination of this action with two overlapping PAGA actions filed in Sacramento and Los Angeles. The Sacramento action, *Stolz v. Tavistock Freebirds, LLC* (*Stolz*), was filed in July 2014 but was stayed pending arbitration of the plaintiff's individual claims. In March 2021, Tavistock filed an ex parte application in this action to stay litigation and vacate the trial date pending the resolution of the petition for coordination. The trial court denied the application for lack of good cause. Tavistock then

---

[2] This section only recites the facts that are relevant to the issues on appeal.

filed a motion to dismiss Haaverson's PAGA claims based on unmanageability, which the court also denied.

B.     Motion for Sanctions

Around this same time in March 2021, Haaverson filed a motion requesting terminating, evidentiary, issue, and further monetary sanctions against Tavistock (sanctions motion).  Haaverson argued that despite the trial court's earlier order compelling Tavistock to produce various documents, including time and payroll records, Tavistock continued to withhold these documents from production.  In its supplemental opposition, Tavistock argued that its failure to produce time and payroll records was the result of excusable neglect and not any willful noncompliance and that such records had since been produced.  Haaverson countered that these records were produced only *after* she filed the sanctions motion even though Jennifer Zion, Tavistock's person most knowledgeable, testified at her earlier deposition that timekeeping and payroll records were provided to Tavistock's counsel in early 2020, well before the court granted the initial motions to compel.

On April 26, 2021, the trial court began an evidentiary hearing on the sanctions motion.  The court heard testimony from Ms. Zion as well as from Tavistock's IT manager, Tim Richard.[3]  The trial also began, and the parties filed their motions in limine.  At the continued hearing on April 29, 2021, Tavistock's counsel informed the court that *Stolz* had settled and that Haaverson's PAGA claims were subsumed in the *Stolz* settlement. Tavistock's counsel requested leave to amend its answer "to plead settlement and release, [res] judicata and [collateral] estoppel" as well as a stay of this action until the *Stolz* settlement was approved.  The trial court denied both

---

[3] The hearing on Haaverson's motion for sanctions spanned across several days between April 12, 2021 and May 5, 2021.

3

requests, stating that the settlement had not yet been approved and that a stay would be prejudicial since the parties were in trial.

On May 10, 2021, the trial court granted terminating sanctions against Tavistock. In its amended order, the court highlighted that during the evidentiary hearing, "Mr. Richard stated that *no one at Tavistock Freebirds ever requested that he collect the data of edited punch records* from any California location" even though these records "were stored on the back office computers." The court also stated that "Ms. Zion admitted that she did nothing to search for those initialed edited punch reports before the California locations were closed [in March 2020] and that she took no steps to ensure that general managers were not disposing of the paper copies of the edited punch reports on which the employees signed off." The court concluded that Tavistock willfully failed to produce its pay and time records in a timely manner, failed to maintain these records, and "engaged in a pattern of litigation and discovery abuse with respect to their time records [] and pay records." The court struck Tavistock's answer to the complaint, issued a judgment by default against Tavistock pursuant to section 2023.030, and set the matter for a default prove-up hearing.

C.    Default Judgment

At the default prove-up hearing, Haaverson's expert testified that the maximum PAGA penalty for Tavistock's various Labor Code violations totaled $3,451,650. Following the hearing, Haaverson submitted supplemental briefing in support of her request for prevailing party attorney fees and costs. In the brief, she requested a 3.0 multiplier. On August 24, 2021, the court entered a default judgment against Tavistock for the following amounts as requested by Haaverson: (1) $3,451,650 as the PAGA penalty; (2) $709,620 in attorney fees which included a 3.0 multiplier; (3)

4

$20,494.50 in paralegal and legal assistant fees; (4) $22,799.40 in litigation costs; and (5) $5,500 in administration costs to distribute the PAGA penalty. The judgment totaled just over $4.2 million.

Tavistock filed several post-judgment motions, including a motion to vacate the judgment. Tavistock argued, among other things, that the judgment was void because it exceeded the amount pled in the complaint and that no evidence supported the court's 3.0 multiplier award. At the hearing on the post-judgment motions, the trial court gave Haaverson two options: she could agree to an amended judgment that reduced damages to $25,000 to conform with section 580 or she could amend the complaint to pray for a different amount of damages. The court cautioned, however, that it did not know what ramifications the *Stolz* settlement would have if Haaverson elected to amend the complaint. The court further stated that if Haaverson amended the complaint, "the slate would be wiped clean" with respect to Tavistock's prior misconduct and there would have to be some future misconduct to justify reinstating the sanctions order. Given this, Haaverson's counsel elected to amend the judgment but argued that the attorney fee award should remain the same. The court agreed and held that the fee award, including the multiplier, was still valid.

On November 5, 2021, the trial court entered an amended default judgment which included a reduced PAGA penalty of $25,000. The amounts awarded for attorney fees, paralegal and legal assistant fees, and costs, which totaled $758,413.90, remained unchanged from the original default judgment. Tavistock timely appealed the amended default judgment.

5

## II. **DISCUSSION**[4]

A.   <u>Standard of Review</u>

The first issue presented on appeal is whether the amended default judgment exceeded the relief demanded in the complaint; thereby, rendering it void as beyond the trial court's jurisdiction.  This is a pure question of law that is reviewed de novo.  (*Dhawan v. Biring* (2015) 241 Cal.App.4th 963, 968.)  The second issue is whether the trial court erred in applying a 3.0 multiplier to the award of attorney fees.  This is reviewed for abuse of discretion, "which is found only where no reasonable basis for the court's action can be shown."  (*Ramos v. Countrywide Home Loans, Inc.* (2000) 82 Cal.App.4th 615, 621.)

B.   <u>"Relief" Under Section 580, Subdivision (a) Does Not Include Attorney Fees or Costs.</u>

Tavistock argues that the amended default judgment's award of attorney fees and costs is void because the complaint did not allege any specific amounts for fees or costs as required under section 580.  Tavistock further argues that the complaint's prayer for "reasonable attorney's fees and costs" did not provide it with adequate notice of the maximum judgment it could be exposed to as due process requires.  We are unpersuaded by these arguments.

A default judgment "cannot exceed" the maximum amount of "*relief*" "demanded in the complaint, in the statement [of damages] required by Section 425.11, or in the statement [of punitive damages] provided for by Section 425.115 . . . ." (§ 580, subd. (a), italics added.)  This holds true whether a default judgment is taken after a defendant's failure to answer or after an answer is stricken due to a defendant's discovery abuse.  (*Greenup v.*

_____

[4] We grant Haaverson's unopposed request for judicial notice.

*Rodman* (1986) 42 Cal.3d 822, 828 (*Greenup*).)  The pertinent question is whether the term "relief" in section 580, subdivision (a) includes attorney fees and costs.  We conclude it does not.

As with any question of statutory interpretation, we begin by looking at the "plain meaning" of the statute.  (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.)  "The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and the provisions relating to the same subject matter must be harmonized to the extent possible."  (*Ibid.*)  Indeed, courts should " 'read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." ' "  (*Calatayud v. State of California* (1998) 18 Cal.4th 1057, 1065, quoting *People v. Pieters* (1991) 52 Cal.3d 894, 898–899.)

To that end, we find the reasoning in *Simke, Chodos, Silberfeld & Anteau, Inc. v. Athans* (2011) 195 Cal.App.4th 1275 (*Simke*) persuasive. There, the Court of Appeal held that under section 580, a complaint need not specify the dollar amount of attorney fees in order for the plaintiff to recover such fees in a default judgment following terminating sanctions against the defendant.  (*Id*. at p. 1278.)  Noting there was "no universal definition or plain meaning of 'relief,' " the court initially looked to "related statutes and rules" for guidance.  (*Id*. at p. 1286.)

First, *Simke* cited Judicial Council form CIV-050 in support of its holding.  (See *Sass v. Cohen* (2020) 10 Cal.5th 861, 898 (*Sass*) [looking to Judicial Council Forms in construing statute]; *Los Angeles County Dept. of Children and Family Servs. v. Superior Court* (2008) 162 Cal.App.4th 1408, 1419 [same].)  As referenced in section 580 itself, a statement of damages is used to demand "relief" in personal injury or wrongful death actions pursuant

to section 425.11.  And Judicial Council Form CIV-050 is the mandatory form a plaintiff must use for that statement of damages.  (See Cal. Rules of Court, rule 1.31(a)–(c); Gov. Code, § 68511; 23 pt. 4 West's Ann. Code, Court Rules (2006 ed.) appen. A, pp. 477, 479.)  The form, however, makes no mention of attorney fees or costs as part of the "relief" demanded "even though fees are recoverable by statute in several types of personal injury and wrongful death actions."  (*Simke*, *supra*, 195 Cal.App.4th at p. 1287.)  This omission suggests that "relief" under section 580, subdivision (a) does not include attorney fees and costs.

Second, *Simke* pointed to the "Request for Entry of Default' " form (default form).  (Judicial Council Forms, form CIV-100).  Pursuant to section 585, in routine default cases where a defendant fails to answer, a plaintiff must first use that form to apply for entry of default.  (See Cal. Rules of Court, rule 1.31(a)–(c); Gov.Code, § 68511; 23 pt. 4 West's Ann.Code, Court Rules (2006 ed.) appen. A, pp. 477, 479.)  The form includes separate spaces for a plaintiff to enter amounts sought as damages and amounts sought as attorney fees and costs.  As the court in *Simke* observed, this form "distinguishes between the 'relief' permitted by section 580—'Demand of complaint' or 'Statement of damages'—on the one hand, and items not governed by section 580—'Interest,' 'Costs,' and 'Attorney fees'—on the other hand, indicating that [monetary] 'relief,' as used in section 580, means 'damages.' " (*Simke, supra,* 195 Cal.App.4th at pp. 1287–1288.)

We agree with *Simke*.  If the term "relief" "demanded in the complaint" under section 580 is to be harmonized with the statement of damages and the default form, then "relief" as referenced in subdivision (a) cannot be read to

include attorney fees or costs because that would render it inconsistent with the forms.[5]

*Simke* further noted that the plaintiff was not required to request entry of default because he had sought a default *judgment* as part of his request for terminating sanctions. (*Simke, supra,* 195 Cal.App.4th at p. 1289.) Under section 2023.030, subdivision (d)(4), a trial court may impose a terminating sanction by issuing "[a]n order rendering a judgment by default against" a party. Likewise, here, Haaverson was not required to submit a default form because the trial court entered a default judgment as part of its terminating sanctions against Tavistock.

We acknowledge that there is a discrepancy between attorney fees and costs sought in a routine default case where a plaintiff must provide notice of

---

[5] Tavistock's argument that the term "relief" as used in section 580, subdivision (a) must mean attorney fees based on the use of that same term in sections 580, subdivision (b)(1) and 585, subdivision (a) ignores the language in section 580, subdivision (a) referencing the statement of damages, which does not require the inclusion of any attorney fees or costs. Upon construing the term in the context of that reference in section 580, subdivision (a) (see *Pearson v. State Social Welfare Bd.* (1970) 54 Cal.2d 184, 194–195 ["words used in a statute may, as applied to the words with which they are combined and to the words with which they were intended to be related, have connotations which they might not have when used in context with, or in relation to, other language or where used to express a different purpose"]), section 580, subdivision (a) only prohibits the "grant[ing]" of relief in a default judgment that "exceed[s]" the relief "demanded in" the statement of damages. It does not limit the trial court's ability to grant other relief, such as attorney fees or costs, that does not have to be demanded in the statement of damages. Thus, the fact that the term "relief" as used in sections 580, subdivision (b)(1) and 585, subdivision (a) includes attorney fees does not mean that the "relief . . . demanded . . . in the statement" of damages as referenced in section 580, subdivision (a) must as well. Accordingly, for consistency, the "relief … demanded in the complaint" in section 580, subdivision (a) cannot mean that attorney fees are not recoverable if the complaint does not include a specific fee amount.

the amount in the default form prior to the entry of default and a case like this one where a plaintiff is not required to provide pre-default notice of the amount. (See *Garcia v. Politis* (2011) 192 Cal.App.4th 1474, 1479 ["a party seeking entry of a default judgment must apply for *all* of the relief sought—including attorney fees—when application is made for entry of default"].) But we agree with *Simke* that providing a final pre-default notice of the attorney fees sought when a plaintiff moves for terminating sanctions does not further the purpose behind section 580—i.e., to inform a defendant's choice as to whether to pursue a defense. (*Greenup, supra*, 42 Cal.3d at p. 829.) In the context of terminating sanctions, "[b]y the time such notice would be given, the defendant would no longer have any choice in the matter. Rather, the *trial court*, in ruling on the motion for terminating sanctions, would decide whether the right to defend had been lost." (*Simke, supra*, 195 Cal.App.4th at p. 1293.)

Further, the routine "default judgment procedure [under section 585] is 'designed to clear the court's calendar and files of those cases which have no adversarial quality.' " (*Garcia v. Politis, supra*, 192 Cal.App.4th at p. 1479.) This avoids for example, separate post-judgment motions for attorney fees. (*Ibid.*) Requiring the amount of attorney fees to be included in the standard request for entry of default form therefore promotes judicial economy and efficiency. The same is not true for a default judgment entered as part of terminating sanctions.

Case law confirms that "relief" under section 580, subdivision (a) does not mean attorney fees or costs. In *Greenup, supra*, 42 Cal.3d at page 829, our high court held that "due process requires notice to defendants, whether they default by inaction or by willful obstruction, of the potential consequences of a refusal to pursue their defense. Such notice enables a

10

defendant to exercise his right to choose—at any point before trial, even after discovery has begun—between (1) giving up his right to defend . . . at the cost of exposing himself to greater liability." *Greenup* however, was specific in its holding that section 580 limited the amount of *damages* a plaintiff could recover in a default judgment. (*Ibid.*)

Tavistock asks that we extend the reasoning in *Greenup* and hold that "relief" under section 580, subdivision (a) means attorney fees as well. We decline to do so for several reasons. First, the California Supreme Court itself has, in the past, indicated that section 580 does not require that a complaint specify the amount of attorney fees sought before a plaintiff can recover these fees in a default judgment. In *Horton v. Horton* (1941) 18 Cal.2d 579 (*Horton*), the Supreme Court held that the trial court's award of $200 in spousal support and $400 in attorney fees "was directly responsive to the wife's prayer for reasonable sums for support and maintenance, attorney fees and costs" so the default judgment "cannot be said to transgress the limitation of section 580." (*Id*. at p. 583.)

Although the California Supreme Court has overruled *Horton*'s holding that the amount of requested support and maintenance (damages) need not be specified in the complaint in order to recover those damages in a default judgment, it made no mention of *Horton*'s holding that attorney fees and costs are recoverable in a default judgment where the complaint seeks a "reasonable sum" but does not allege specific amounts. (*Sass, supra*, 10

11

Cal.5th at p. 874.)[6] We therefore presume that this holding remains valid.[7] This presumption is supported by a careful review of *Sass*.

In *Sass*, the high court held that a plaintiff alleging an accounting claim was not exempt from the requirements of section 580 and "must plead a specific dollar amount to support a default judgment awarding monetary relief." (*Sass*, *supra*, 10 Cal.5th at p. 891.) The court, however, focused solely on damages and held that "section 580 is reasonably understood to require that the amount of *damages* granted in default shall not exceed 'the amount demanded' in the complaint." (*Id.* at p. 876, italics added.) The issue of attorney fees was not before the high court and was not addressed in its opinion. (*Id.* at p. 892.) The Court of Appeal, however, *did* address the issue and held that, for purposes of a default judgment, "the operative complaint must allege the amount of 'relief' sought for *damages*, but not prejudgment interest, attorney fees, or costs." (*Sass v. Cohen* (2019) 32 Cal.App.5th 1032, 1040.)

The California Supreme Court in *Sass* did state that "[b]ecause section 580 is not limited to complaints in which money is requested, the Legislature's use of the broad term 'relief' is understandable." (*Sass, supra*, 10 Cal.5th at p. 875.) Tavistock contends this statement supports its position

---

[6] The high court also left open the question of whether "a plaintiff using a standard form petition to dissolve her marriage need only put the defendant on notice that she was seeking a type of relief, and not a specific amount." (*Sass*, *supra*, 10 Cal.5th at p. 884.)

[7] This is consistent with the Supreme Court's subsequent holding in *Becker v. S.P.V. Construction Co.* (1980) 27 Cal.3d 489, 494–495, which concluded that the trial court exceeded its authority under section 580 in awarding attorney fees in a default judgment because the complaint failed to set forth *any* prayer for attorney fees. We read this holding to mean only that a complaint must provide notice that attorney fees are sought, not that a specific amount must be provided.

that "relief" under section 580 encompasses attorney fees. We disagree. In making the statement, the high court was merely noting that non-monetary forms of relief such as equitable relief are sometimes sought and that "it would not make sense to say in those circumstances that " '[t[he amount granted to plaintiffs . . . cannot exceed that demanded in the complaint.' " (*Ibid*.) The court was not holding that relief under section 580, subdivision (a) includes attorney fees. Indeed, the high court made it clear that its holding was limited to damages when it concluded, "because the Legislature did not separately address instances in which money *damages* are at stake in drafting section 580, it is sensible that the statute uses the more encompassing word 'relief.' " (*Ibid.*, italics added.)

Tavistock's due process arguments are also unpersuasive. From a due process standpoint, there is a material difference between providing an estimate of monetary damages that have already been incurred and providing an estimate of attorney fees that are not yet incurred. Indeed, the amount of fees to be incurred necessarily depends on how aggressively a defendant elects to respond. Thus, any estimate of attorney fees at the outset of litigation is wholly speculative.

Nonetheless, Tavistock contends that because the plaintiff in *Sass, supra,* 10 Cal.5th 861 was required to provide notice of an estimated dollar amount to support a default judgment in her accounting action, a plaintiff should likewise be required to provide notice of the amount of attorney fees sought. But damages in an accounting action are not wholly speculative at the outset of litigation because the information needed to compute those damages already exists. (See *Sass, supra*, 10 Cal.5th at p. 869 [accounting claim assumes that information needed to compute damages "is within the control of the defendant"].) Thus, the high court in *Sass* held that "despite

13

their relative lack of knowledge about the precise amounts owing, plaintiffs bringing accounting claims [] are generally able to estimate their damages." (*Id*. at p. 864.) The same is not true for *prospective* attorney fees which are simply unknowable by either party at the time the complaint is first filed.

In any event, the due process concerns raised by Tavistock are far less pressing in a default judgment entered as a terminating sanction. Before a default judgment can be taken, due process requires that a complaint include an estimate of the monetary damages sought so that a defendant can make an informed choice "at any point before trial, even after discovery has begun—between (1) giving up his right to defend in exchange for the certainty that he cannot be held liable for more than a known amount, and (2) exercising his right to defend at the cost of exposing himself to greater liability." (*Greenup, supra,* 42 Cal.3d at p. 829.) In many cases, "[t]he higher the figures an individual names in a complaint, the less likely it is that the defendant will 'giv[e] up his right to defend.' " (*Sass*, *supra,* 10 Cal.5th at p. 899.)

Requiring that a plaintiff include an estimate of attorney fees that may be incurred up to the point of trial in the complaint would not meaningfully assist a defendant in making any informed choice. Unlike damages which are more or less fixed in their amount and do not depend on the manner of default, attorney fees will vary greatly depending on whether a default is taken following a defendant's failure to answer or, like here, following lengthy discovery, motion practice, and terminating sanctions. Because of the speculative nature of any attorney fee estimate at the outset of litigation, a plaintiff is in no better position than a defendant to make that estimate. Indeed, a defendant is arguably in a better position than the plaintiff to estimate the amount of fees to be incurred by the plaintiff because that

14

amount depends, in large part, on how the defendant chooses to proceed in litigation. Therefore, a complaint's request for "reasonable attorney fees" provides sufficient notice to a defendant that fees are sought while recognizing the near impossibility for the plaintiff to predict what the actual fees will be.[8]

Tavistock argues that estimating attorney fees is not impossible because "it is a common practice for attorneys to provide a fee estimate budget to their clients." While this may be true, it is also common practice for attorneys to regularly update these budgets as litigation progresses since initial budgets seldom reflect an accurate estimate of the actual fees and costs that are ultimately incurred. Based on Tavistock's argument, a plaintiff should also be required to regularly amend the complaint to provide a defendant with an up-to-date estimate of incurred and expected fees and costs throughout the litigation up until trial. We decline to read the law in this manner and conclude that neither section 580 nor due process requires that a complaint specify the amount of attorney fees or costs sought.

C. The Trial Court Did Not Err in Awarding $758,413.90 in Attorney Fees and Costs to Haaverson.

1. *Haaverson Was the Prevailing Party*.

Tavistock next contends that Haaverson should not be considered the prevailing party for purposes of attorney fees based on the discussion of *Janssen v. Luu* (1997) 57 Cal.App.4th 272 (*Janssen*) in *Simke, supra,* 195

---

[8] Forcing a plaintiff to estimate the attorney fees to be incurred at the outset of litigation would be largely meaningless to a defendant. This is because a reasonably prudent plaintiff will inflate the amount of fees sought to account for the worst case scenario. This inflated amount will either be disregarded by the defendant as illusory or compel the defendant to defend the case even though it would be more economical to default.

15

Cal.App.4th 1275, a case Tavistock simultaneously urges us not to follow elsewhere in its brief. We find little merit in Tavistock's contention.

In *Janssen*, the plaintiff's complaint for breach of contract "prayed for damages 'in excess of $3,000.00 and according to proof,' [and] attorney fees, costs of suit . . . .' " (*Janssen, supra*, 57 Cal.App.4th at p. 274.) Following the defendant's default and a prove-up hearing, a default judgment was entered in the amount of $24,825.04, and attorney fees and costs of $2,123.99. (*Ibid*.) On appeal, the Court of Appeal held that under section 580, the plaintiff was only entitled to a default judgment for $3,000 and that any excess amount must be stricken, along with amounts awarded for fees and costs. (*Id*. at p. 279.)

Approximately 14 years later in *Simke*, the same court explained that *Janssen* did not strike fees and costs because no amount was stated in the complaint but "[r]ather, because the underlying award of damages should have been $3,000, not the $24,825.04 the trial court awarded, attorney fees of $2,006.99, when compared to $3,000 in damages, were not justified and had to be reversed." (*Simke, supra,* 195 Cal.App.4th at p. 1291.) The court compared the result in *Janssen* as "analogous to a complete and unqualified reversal of liability, thereby requiring that an award of attorney fees to the plaintiff be vacated." (*Ibid*.) As *Janssen* itself did not state this as the basis for striking attorney fees, the court in *Simke* was to some extent speculating as to *Janssen's* reasoning, and we decline to view such speculation as persuasive authority.

In any event, this is a PAGA action, and not a breach of contract action like *Janssen*. The law is well settled that " ' "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties

16

sought in bringing suit." ' " (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1292.)
A representative PAGA action "to recover civil penalties 'is fundamentally a
law enforcement action designed to protect the public and not to benefit
private parties.' " (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 986.)  Here,
Haaverson succeeded on her PAGA claim by way of a default judgment
awarding civil penalties after obtaining terminating sanctions against
Tavistock.  The trial court's reduction of the penalties here was done
pursuant to the requirements of section 580 and was not tied in any way to
Tavistock's corresponding liability.  The trial court further commented that it
was highly skeptical that *Stolz* would have settled absent Haaverson's
diligent prosecution and pressure in bringing this case to trial.  Given this,
we find that Haaverson was the prevailing party.  (See *Atempa v. Pedrazzini*
(2018) 27 Cal.App.5th 809, 815, 829 [affirming attorney fee award of
$315,014 in PAGA action even though the plaintiff only obtained $31,074 in
civil penalties because the plaintiff "successfully obtained their award of civil
penalties"].)

      2.  *The Trial Court Did Not Abuse its Discretion in Awarding a
        3.0 Multiplier.*

Tavistock next argues that the attorney fees awarded were excessive
because the trial court failed to justify its application of a 3.0 multiplier.  We
disagree and find that the court properly acted within its discretion in
applying the multiplier.

Factors used to justify a multiplier or enhancement to the lodestar
amount of fees include "(1) the novelty and difficulty of the questions
involved, (2) *the skill* displayed in presenting them, (3) the extent to which
the nature of the litigation precluded other employment by the attorneys,

[and] (4) the contingent nature of the fee award." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132, italics added.)

"A trial court's exercise of discretion concerning an award of attorney fees will not be reversed unless there is a manifest abuse of discretion." (*Nichols v. City of Taft* (2007) 155 Cal.App.4th 1233, 1239.) This includes the trial court's decision to apply a multiplier. (*Id.* at p. 1241.) Discretion however, "must not be exercised whimsically, and reversal is appropriate where there is no reasonable basis for the ruling or the trial court has applied 'the wrong test' or standard in reaching its result." (*Id.* at p. 1239) That a reviewing court would have exercised its discretion differently if it had issued the fee award amount does not justify reversal. (*Harmon v. City and County of San Francisco* (2007) 158 Cal.App.4th 407, 428.)

In supporting the application of the multiplier, the trial court observed that Haaverson's counsel "displayed a very high degree of skill in litigating this matter" and that "[t]his has been a difficult case" that "has gone on for a long time." The court further stated that Haaverson's counsel "provided a great service . . . to the Court and to the people of the State of California and the employees that were involved here in prosecuting this action at great risk to themselves, a pecuniary risk, and did display a high degree of skill." Because there is ample evidence in the record to support these observations, we cannot conclude that the court abused its discretion in awarding a 3.0 multiplier.

In reaching this conclusion, we find no evidence to support Tavistock's argument that the 3.0 multiplier was used to punish Tavistock. Though the court commented that Haaverson had to "litigate the case despite the lack of cooperation from defense counsel" and "work extremely hard . . . in light of [Tavistock's] failures," this was to further support the court's position that

Haaverson's counsel was exceptionally diligent in bringing this case to trial, which the court believed contributed to the *Stolz* settlement. Accordingly, we do not find that the trial court's decision was arbitrary or whimsical and conclude it had a reasonable basis in applying a 3.0 multiplier.

### 3. *Administrative Costs*

Tavistock argues that the award of $5,500 in administration costs to distribute the PAGA penalty is not recoverable under section 1033.5 because such administration costs are not "reasonably necessary to the conduct of the litigation." We disagree.

Section 1033.5 sets forth the items of costs which may or may not be recovered in a civil action. "An item not specifically allowable under subdivision (a) nor prohibited under subdivision (b) may nevertheless be recoverable in the discretion of the court if 'reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation.' (§ 1033.5, subd. (c)(2).)" (*Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 761, 774.) Here, Haaverson's counsel represented to the trial court that this administration cost was necessary in order to distribute the funds to a large group of [408] employees in this PAGA action. We agree. The trial court acted within its discretion in awarding these administration costs as they are not prohibited under section 1033.5, subdivision (b) and are reasonably necessary to effectuate the distribution of the PAGA penalty to the over 400 employees who are entitled to their share. Indeed, such costs are routinely approved in PAGA cases. (See *Moniz v. Adecco USA, Inc.* (2021) 72 Cal.App.5th 56, 69 [approval of $78,000 for costs, fees, and settlement administrator costs]; *Amaro v. Anaheim Arena Management, LLC* (2021) 69 Cal.App.5th 521, 533 [approval of $43,500 in settlement administrator costs].)

19

### 4. *Legal Assistant Fees*

Lastly, Tavistock contends that Haaverson's legal assistant fees are not recoverable under section 1033.5. Tavistock argues that "Haaverson's counsel requested $22,799.40 in paralegal and legal assistant costs, without differentiating between the two, as legal assistants are not paralegals." No further support or argument is provided in Tavistock's opening brief as to why these fees are not "reasonably necessary to the conduct of the litigation" under section 1033.5, subdivision (c)(2). In its reply brief, Tavistock raises a new argument that Haaverson's paralegal *and* legal assistant fees are not recoverable because the evidence Haaverson submitted (a declaration by Haaverson's counsel which stated the total number of hours spent by the paralegals and assistants and their customary hourly rate) did not provide a reasonable basis to determine whether the hours were reasonably expended.

As Tavistock waited until its reply brief to raise this argument for the first time and provided no explanation as to why this argument could not have been raised earlier in its opening brief, we will not consider it. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764–765; *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 56.)

### III.  <u>DISPOSITION</u>

The judgment is affirmed. Haaverson is entitled to recover her costs on appeal.

_____

CHOU, J.

We concur.

_____

SIMONS, Acting P. J.

_____

BURNS, J.

*Haaverson v. Tavistock Freebirds* / A164043